| | | |
|---|---|---|
| DUNCAN PLACE OWNERS ASSOCIATION and PHYLLIS ZISSER, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 15 C 01662 |
| v. | ) ) | Judge Edmond E. Chang |
| DANZE, INC., f/k/a GLOBE UNION AMERICA CORPORATION, and GLOBE UNION GROUP, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This action flows out of allegedly faulty faucets that Defendants Danze, Inc. and Globe Union Group, Inc. sold for use in private homes by means of allegedly fraudulent and deceptive marketing. Plaintiffs Duncan Place Owners Association and Phyllis Zisser bring suit on behalf of a purported class who bought the faucets, which were allegedly marred by flawed water supply hoses. Plaintiffs raise a number of state-law claims, including: breach of express and implied warranty, breach of warranty of merchantability, negligence, strict-products liability, breach of contract, unjust enrichment, and (on behalf of a subclass of New York consumers) violation of a deceptive-acts provision of the New York General Business Law. *See* R. 21, Am. Compl. ¶¶ 65-130.[1] Defendants now move to dismiss on two separate

---

[1]Citations to the record are indicated as "R." followed by the docket number. Jurisdiction in this purported class action is invoked under 28 U.S.C. § 1331(d)(2), as the

grounds: Duncan Place's lack of associational standing to sue on behalf of individual faucet-consumers under Federal Rule of Civil Procedure 12(b)(1); and the amended complaint's failure to state a claim for relief under Rule 12(b)(6). For the reasons described below, the motion is granted in part and denied in part.

## I. Background

### a. Factual Allegations

At the dismissal stage, the amended complaint's factual allegations must be accepted as true and reasonable inferences drawn in Plaintiffs' favor. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2079 (2011). Danze, a Delaware corporation with a principal place of business in Woodridge, Illinois, is a subsidiary of Globe Union Group (for simplicity's sake, the two Defendants will be collectively referred to as Danze).[2] Am. Compl. ¶¶ 9, 11. Danze markets and sells faucets around the world and in all 50 states, through wholesalers as well as retail outlets in physical showrooms and on the internet. *Id*. ¶¶ 19, 20.

According to the amended complaint, Danze advertises its faucets as safe and reliable, so that customers "never have to worry about a drip." *Id*. ¶ 20. Online, Danze touts the "high levels of craftsmanship" of its faucets, which it describes as "top-notch without a top-notch price tag." *Id*. ¶ 21. Danze offers a "limited lifetime

amount in controversy exceeds $5,000,000 and there is diversity between "any member" of the class and "any defendant." *See* Am. Compl. ¶¶ 6, 11 (alleging that Duncan Place is incorporated in Washington State (it is reasonable to infer that the principal place of business is the location of the condo association, also in Washington State) and Danze in Delaware (Danze's principal place of business is Woodridge, Illinois).

[2]The parties stipulated to the voluntary dismissal without prejudice of a third Defendant, Globe Union Industrial Corporation, from the action in July 2015. *See* R. 39, Joint Stipulation of Dismissal.

warranty" for its faucets on its website, which states that "all parts of the Danze faucet are warranted to the original consumer purchaser to be free from defects in material and workmanship, for as long as the consumer purchaser owns it." *Id.* ¶ 22 (citing Danze's website).

Plaintiffs paint a different picture. They allege that Danze's representations and warranty led reasonable customers to believe falsely that the faucets are long-lasting, premier products that do not require maintenance when, in reality, they suffer from defects that cause them to fail "well prior to their warranted lifetime." *Id.* ¶¶ 22-24. Specifically, the amended complaint says that the faucets are "universally defective because they incorporate inferior inflexible water supply hoses that are susceptible to stress corrosion cracking when put to normal use," leading to "extensive property damage." *Id.* ¶ 21. These water supply hoses are flexible and steel braided, appearing durable but in fact are made from a low nickel stainless steel alloy that makes them vulnerable to corrosion. *Id.* ¶¶ 25, 26. According to Plaintiffs, "most stainless steel flexible braided hoses for use in plumbing applications are manufactured" out of a stainless steel alloy that contains a higher nickel content, and it is this difference that causes the cracking in Danze's faucets. *Id.* ¶ 28. Plaintiffs allege that despite knowing about this defect, Danze continued to make false statements on its websites and in brochures, advertisements, and warranties about the faucets' design and function (as well as omitting information about their problems), while failing to honor its warranty promises. *Id.* ¶¶ 33-37.

The amended complaint alleges that purchasers of Danze faucets make the decision to buy that brand "based in part and in reliance upon" Danze's representations on its website, warranties, and marketing literature. *Id.* ¶ 38. Danze faucets were installed in each of the 63 units in the Duncan Place Condominium, located in Seattle, Washington, when the building was built in 2009. *Id.* ¶¶ 6, 44. The Duncan Place Owners Association (referred to as Duncan Place for short) claims that "a number of these faucets have failed, causing … extensive damages including, but not limited to, severe property damage, deductible amounts paid under its property insurance policy for each loss, and greatly increased insurance premiums due to the loss history." *Id.* ¶ 44. Danze allegedly failed to repair or replace these faucets in accordance with its warranties, or reimburse Duncan Place for the cost of damages. *Id.* ¶ 45.

The other named-Plaintiff, Phyllis Zisser, has had three Danze faucets installed in her Oceanside, New York home, and each faucet has allegedly failed. *Id.* ¶ 8. Zisser alleges that after she purchased her first faucet in October 2012, she experienced "extensive problems getting the supply hose to retract back within the faucet after being expanded." *Id.* ¶ 46. Danze provided her with a replacement faucet in December 2012 as well as $250 to reimburse out-of-pocket repair costs, but the same retraction problem soon arose. *Id.* Zisser then received a different model Danze faucet and another $250 in April 2014, but this faucet (featuring another steel-braided supply hose) suffered from the same problem. *Id.* ¶¶ 47, 48. The faulty

faucet "drips roughly every thirty seconds and the steel braided supply hose has frayed in multiple places." *Id.* ¶ 48.

## b. Procedural History

Plaintiffs filed this lawsuit in February 2015, on behalf of a proposed class of "original consumer end-users of Danze brand faucets installed in homes, residences, buildings, or other structures physically located in the United States, in which Danze faucets are or have been instanced since 2000." *Id.* ¶ 50. The amended complaint proposes class-eligible faucets to be "all faucets incorporating a steel braided supply hose manufactured or distributed" by Danze. *Id.* The amended complaint also proposes two subclasses of applicable consumers in Washington and New York, respectively. *Id.* ¶¶ 51, 52. The substantive claims alleged arise under state common-law causes of action for breach of express and implied warranty, breach of warranty of merchantability, negligence, strict-products liability, breach of contract, and unjust enrichment; additionally, a claim is raised for the New York subclass under that State's deceptive-acts statute. *Id.* ¶¶ 65-130. Defendants filed a motion to dismiss against both named Plaintiffs [R. 32], the scope of which the Court narrowed to questions about Duncan Place's standing and the merits of both Plaintiffs' claims under Rule 12(b)(6) only—denying without prejudice certain arguments against the class allegations and Zisser's suitability as a class representative, which are not yet ready to be addressed. *See* R. 38, Minute Entry dated 06/11/15.

## II. Legal Standards for Motions to Dismiss

By invoking Federal Rule of Civil Procedure 12(b)(1), a defendant seeks to dismiss a claim or suit on the ground that the court lacks jurisdiction. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). When evaluating such a motion, the court must accept all well-pled allegations as true and draw reasonable inferences in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). The court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue." *Id.* (quoting *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (per curiam)).

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Motion to Dismiss for Duncan Place's Lack of Standing

### 1. No Associational Standing

Danze correctly contends that Duncan Place lacks standing to bring claims on behalf of its component member-condo owners, who are the actual owners of the faulty faucets in question. It is well-established that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Danze does not dispute the existence of the first two elements, but argues that Duncan Place cannot satisfy the third. R. 37, Defs.' Br. at 5-8. Danze is correct.

The Supreme Court has taught that key to the third *Hunt* element is a distinction between monetary claims and actions raising other types of relief. *See Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought."). Because "[d]eclaratory, injunctive, or other prospective relief will usually inure to the benefit of the members actually injured … individualized proof of damages is often unnecessary," raising no need for member participation in a lawsuit prosecuted by a representative association. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d

584, 603 (7th Cir. 1993) (citing *Warth*, 422 U.S. at 515). By contrast, associations may not "proceed on behalf of their members when claims for monetary, as opposed to prospective, relief are involved." *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 923 (7th Cir. 1995) (citing *Hunt* and cases from Fifth, Eighth, and Ninth Circuits). Even where "individual calculation of damages … might be rather technical and uncomplicated," the case-specific nature of proving up money damages necessarily means that individual members must become involved. *Id.*

Here, Duncan Place does seek monetary damages, arising from the harm caused by "a number of [Danze] faucets" failing in the building. Am. Compl. ¶ 44. In the units where the faucets broke down (the wording of the allegation presumably means that the faucets did not fail in every one of the 63 units), there is no factual description of the nature of the damage caused, aside from being described as "extensive," *id.*, and certainly no description that would suggest that the damages would be precisely the same. It is thus clear that "claims are not common to the entire membership, nor shared by all in equal degree," so that "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515-16. Put another way, on the face of the pleadings, there is no way around the fact that whether and to what extent the faulty faucets damaged each home will demand particularized factual inquiries.[3]

---

[3]Duncan Place suggests that members' participation is not really required in the action because under the condo association's rules, it has the right to simply enter all individual homeowners' units to conduct inspections of faucet damage. R. 41, Pls.' Resp. Br. at 6-7. The individual-participation inquiry does not revolve around whether a particular

Duncan Place believes that a rule recognized by the Seventh Circuit in *Retired Chicago Police Association* nonetheless allows Duncan Place to satisfy the third element of the *Hunt* test. R. 41, Pls.' Resp. Br. at 6. This argument does not hold water. It is true that *Retired Chicago Police Association* did recognize that *Hunt* and its progeny should not be taken to "limit representational standing to cases in which it would not be necessary to take *any* evidence from individual members of an association"—that is, associational standing can be proper in certain scenarios where "evidentiary submissions of *some* of the members" might be required. 7 F.3d at 602 (emphases added). Importantly, however, this point was limited to situations where some individual participation would be necessary to establish a defendant's underlying liability and plaintiffs' right to recovery; the court specifically reaffirmed that under *Hunt*, "situations in which it is necessary to establish 'individualized proof' of damages," rather than "to support the cause of action" itself, are still fatal to associational standing. *Id.* at 602-03 (explaining that presence of some and not all associational members, recipients of a city annuity, was required to gather evidence about whether defendant-city had made certain liability-inducing misrepresentations in the first place) (quoting *Hunt*, 432 U.S. at 344). By contrast, individualized inquiry would not be necessary in this case to help establish the right to recovery (which is based on the alleged, and accepted at this

---

member would be physically inconvenienced by an inspection; the inquiry turns instead on whether separate analyses are required to figure out the scope of damages arising from the distinct and separate legal harms to individual homeowners. Whether Duncan Place can order unit-inspections is irrelevant to this question of members' participation *as legal parties*.

stage, defectiveness of a fungible product), but to improperly ascertain the separate question of variable monetary damages.

Accordingly, because the individual homeowners affected by Danze faucets must necessarily become involved to vindicate the member-specific monetary relief being sought in this action, Duncan Place lacks the associational standing to sue on their behalf.

## 2. Standing to Assert Claims on Own Behalf

As an alternative to associational standing, Duncan Place argues that it should be recognized as an appropriate plaintiff to the extent that it asserts claims on its own behalf as an organization. Pl.'s Resp. Br. at 7-8. Although the amended complaint is not a model of clarity, the Court agrees that it states the minimum of a valid claim by Duncan Place in it is own right. Namely, it alleges that, as a result of the faulty faucets, "Duncan Place [itself] has suffered extensive damages including, but not limited to, severe property damage, deductible amounts paid under its property insurance policy for each loss, and greatly increased insurance premiums due to the loss history." Am. Compl. ¶ 44. The amended complaint does not say so explicitly, but it can be reasonably inferred that this allegation concerns damage caused by the faucets to *common* areas in the condominium building, for which the association, and not individual members, bears repair and insurance obligations.

Defendants respond that Duncan Place has not successfully asserted its own claims because "at no point does [it] allege a sum of money it expended related to" the asserted property damage or insurance costs. R. 49, Defs.' Reply Br. at 6-7. But

no plaintiff is obliged, of course, to lay out precise monetary damages with that degree of specificity at the pleadings stage (so long as the jurisdictional minimum is properly alleged). *See Smolinski v. Oppenheimer*, 2012 WL 2885175, at *3 (N.D. Ill. July 11, 2012) (citing Fed. R. Civ. P. 8); *Twombly*, 500 U.S. at 569. All that is required is a pleading plausibly alleging that the plaintiff has suffered a legally cognizable harm; the extent of that harm is a factual question to be resolved later in the case. Duncan Place has alleged the necessary minimum facts, so it has standing to assert claims for the damages it has directly suffered (whether these claims pass the Rule 12(b)(6) test is a separate matter, discussed later in the opinion).

### 3. No Effect of Assignments of Claims Absent Amended Pleadings

One last point on the issue of standing: in its response brief, Duncan Place proffers that it has obtained, evidently in direct response to Danze's dismissal motion, assignments from 41 of the 63 unit owners, conveying "all [ ] right, title, and interest in … claims of any kind or nature against Danze" to the association. Pls.' Resp. Br. at 4 (quoting Assignment Agreement); *see also* R. 42-1, Copies of Assignment Agreements. Assigning claims in this manner is generally appropriate, and, assuming they were properly executed, the assignments would enable Duncan Place as assignee to stand in the shoes of the 41 units owners for purposes of their claims against Danze. *See generally Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275-79 (2008) (describing historical development under English and later American common law first rejecting then gradually accepting recognizing assignee's standing to sue); *Hoffeld v. United States*, 186 U.S. 273, 276 (1902).

Defendants oppose Duncan Place's attempt to introduce the existence of the assignments, arguing that there should be no recourse to any extrinsic materials in resolving the dismissal motion. Defs.' Reply Br. at 2-3. Defendants' exact argument—which appears to be premised on the distinction between facial attacks on the substance of the pleadings only and factual attacks considering extrinsic evidence—is not quite clear. In any event, the argument is beside the point at this stage of the case, because the pending motion requires resolution only of the question of Duncan Place's standing to be a party on the current operative complaint. And, as discussed above, the resolution of that issue is that Duncan Place has no associational standing, but does have standing to raise its own direct claims. Any purported assignation of claims by Duncan Place members is, for present purposes, still just that—purported—and has yet to officially change the parties in the lawsuit or resolve any deficiencies in standing. *See Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1043-48 (9th Cir. 2015) (discussing use of supplemental pleading after post-complaint assignment to cure defect in standing).

As the operative complaint in the action still names only Duncan Place as a party in its own right (without reference to the assignments), Plaintiffs will have to amend the complaint (for what would be the second time) to identify Duncan Place as assignee of the 41 individual homeowners' claims, naming each specifically, if they wish to raise these claims. (A proposed second amended complaint attached by Plaintiffs, *see* R. 42, Exh. B, does not appear to individually identify the 41,

rendering it deficient because it provides no notice to Defendants of the particular claims being brought against them. *See generally* Fed. R. Civ. P. 8(a).) And amendment at this stage will require leave of the Court, a request that will have to be properly briefed (unless conceded by the defense). It is at that point, in their opposition to any motion for leave to amend the complaint, that Defendants are free to raise whatever objections they might have to the assignments. For the time being, the claims on behalf of the individual unit owners are *not* part of this action.

## B. Motion to Dismiss for Failure to Claims for Relief

Separate and apart from standing issues, Danze argues that the action should be dismissed because, on the merits, the amended complaint fails to state valid claims for relief on each of its causes of action. Seven of these causes of action are generic common-law claims sounding in various contract and negligence theories, while one arises under a New York statute. Unfortunately, neither party expressly discusses which state's law should govern each of the causes of action, instead citing Illinois, Washington, and New York authority without apparent consistency, and without explanation (all three are cited in the context of some claims, only two for others, and just one for still others). The parties generally assume that there are no material differences between these States' laws as far as the asserted claims are concerned, but, as the analysis below will show, differences do exist with dispositive consequences for at least one claim.[4] Accordingly, a

---

[4]Although the Court does not address class-certification issues yet, it bears noting now, given that this case is a prospective class action, that the question of "uniform law" will also be "essential to class certification." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("No class action is proper unless all litigants are governed by

threshold, choice-of-law inquiry is necessary to provide proper context and guidance.

## 1. Choice-of-Law Analysis

In diversity actions based on state law, a federal court looks to its forum state's choice-of-law rules to figure out the substantive law that must apply. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Illinois has adopted "the broad principle," as articulated by the Restatement (Second) of Conflict of Laws, "that the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007) (rejecting alternative of automatic "place-of-the-injury rule") (citations omitted); *see also Morris B. Chapman & Associates, Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000) (identifying some relevant general factors to consider as listed in § 6 of the Restatement, including "the basic policies underlying the particular field of law," the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"). Although this lawsuit raises a number of different types of legal claims arising under both contract and tort, the different analyses that these claims necessitate under the Restatement lead to a

---

the same legal rules."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (courts must ensure that choice-of-law analysis in nationwide class actions is "not arbitrary or unfair"). Of course, subclasses might be appropriate, but these choice-of-law issues cannot remain below the surface as the case moves forward.

common result: in the case of the claims advanced by Duncan Place, the law of Washington will govern, and in the case of Zisser's claims, New York law applies.

In consumer-protection cases, Illinois conflicts law provides that "where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008) aff'd, 612 F.3d 932 (7th Cir. 2010) (citing Restatement (Second) of Conflicts of Law § 148(1) (1971)); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017 ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters." (emphasis in original)). Although the amended complaint does not say so explicitly, the only inference that can be made from its pleadings is that the allegedly unlawful representations from Danze were transmitted and relied upon in the States where the faucets were purchased and installed.[5] Moreover, generally speaking and absent other extraordinary circumstances, the Restatement is clear that in case of damages "to tangible things," "the local law of the state where the injury occurred determines the rights and liabilities." Restatement (Second) of Conflicts of Law § 147. Again, the faulty faucets allegedly caused property damage to Duncan Place in Washington and to Zisser in New York. Finally, in contract claims where the parties have not effectively pre-chosen an applicable governing law, the Restatement looks to factors such as the place of contracting, negotiation, performance, and subject matter of the contract, as well as the residence and place of business of the parties. *Id.* § 188(2).

---

[5]This point must be clarified in any later pleadings that are allowed to be filed.

All of these considerations also point to Washington and New York, as the pleadings again only suggest that it was there that the entirety of the faucet transactions in question took place (Danze has a principal place of business in Illinois, but this fact plays absolutely no role in the substantive allegations).

In sum, under Illinois' conflict-of-laws analysis, the laws of the States of the two named Plaintiffs have the "most significant relationship" to the claims and shall apply in resolving the motion to dismiss the common-law causes of action.[6] With that ground rule in mind, the Court turns to the various claims.

## 2. Common-Law Claims

### a. Breach of Warranty

### i. Scope of Claims

Plaintiffs raise three generic warranty-related claims: breach of express warranty, breach of implied warranty, and breach of warranty of merchantability. *See* Am. Compl. at First, Second, and Third Claims for Relief. To begin, the organization of Plaintiffs' claims around these causes of action, as currently labeled, is somewhat confusing and inapt, requiring some clarification. For one thing, a warrant of merchantability is by definition a subset of implied warranty. *See* U.C.C. § 2-314 (warranty that fungible goods "are of fair average quality," "pass without objection" and are otherwise merchantable is implied in a contract for their sale"). The other type of implied warranty is one of fitness for a particular purpose (that is,

---

[6]Unlike their failure to do so here, the parties shall brief the question of choice of law in any future motion to dismiss the anticipated amended pleadings. If they believe, once they have properly engaged the issue, that Illinois conflicts-law compels that another State's law, and not Washington and New York law, should govern particular claims, they must advance that argument as an alternative.

something beyond the basic use of a product) that "the seller at the time of contracting has reason to know" is the "purpose for which the goods are required." *Id*. § 2-315. The amended complaint, with separate causes of action for "breach of implied warranty" and "breach of warranty of merchantability," therefore appears to raise both subsets of an implied warranty claim. *See* Am. Compl. at Second and Third Claims for Relief. But there is nothing in the pleadings that would suggest the basis of a claim for warranty of fitness for particular purpose. The allegations that Danze "impliedly warranted that Danze faucets were properly designed, developed, tested, manufactured, distributed, marketed, and sold" and that its faucets were of "first-class, top-notch, and workmanlike quality" speaks solely to questions of general merchantability. Am. Compl. ¶ 87. Accordingly, the Court interprets the amended complaint as raising *only* a claim for breach of implied warranty of merchantability; any other purported claims for breach of implied warranty are dismissed.

On the express-warranty claim, although two particular promises are presented as the basis for it in Plaintiffs' Claim for Relief, only one is actually supported as a factual matter by the pleadings. In the Claim for Relief, Plaintiffs assert that Danze warranted that it "would provide an operational product for a particular warranty period or replace the defective product without consumers having to pay for the labor costs involved." *Id*. ¶ 66. The amended complaint does include allegations that Danze made an express warranty about the quality of the faucets, that they would "be free from defects in material and workmanship." *See id*.

¶ 22 (online warranty promised faucets "to be free from defects in material and workmanship"). But nowhere in the amended complaint do Plaintiffs ever allege an explicit promise by Danze that the company would replace any substandard faucets. Plaintiffs speak of having to expend costs to replace Danze faucets and experiencing difficulties getting the company to replace them (although Zisser did receive two replacement faucets).[7] *Id*. ¶¶ 42, 45-46. The amended complaint's requests for replacement faucets (or replacement costs) appear to assume the existence of an underlying obligation for Danze to offer replacement faucets, yet the amended complaint does not actually identify the source of that duty. Perhaps Plaintiffs envision some kind of implied common-law duty to replace poor-quality merchandise; but Plaintiffs do not cite to authority establishing such a duty as a matter of law, and even if a duty existed did, it would not change the fact that a claim for breach of express warranty requires, at a minimum, the allegation of, well, an *express* "affirmation of fact or promise." U.C.C. § 2-313(1)(a). Thus, because Plaintiffs never actually claim that Danze explicitly promised to replace faucets, any cause of action based on that premise is dismissed; only the express-warranty claim arising out of Danze's affirmations about the *quality* of its faucets survives.

---

[7]The amended complaint includes lengthy block quotations purported to be postings made online by frustrated Danze purchasers, some of which make references to Danze agreeing to replace faucets. Am. Compl. ¶ 43. Putting aside the fact that these anonymous consumer complaints, even if they could be taken as allegations, have no relation to the named Plaintiffs' claims, they too lack any reference to an actual express promise to replace.

### ii. Timeliness

Danze raises a statute of limitations defense against Duncan Place's implied warranty claims. Defs.' Br. at 14-15. As explained, Washington law is the touchstone as far as Duncan Place is concerned, and in that State, actions for breach of warranty must be brought within four years of accrual. *See Kittitas Reclamation Dist. v. Spider Staging Corp.*, 27 P.3d 645, 647 (Wash. Ct. App. 2001). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Wash. Rev. Code § 62A.2-725(2) (noting accrual runs from the breach, "regardless of the aggrieved party's lack of knowledge"). Because the pleadings make clear that installation and delivery of faucets at Duncan Place occurred no earlier than 2009, and this action was not filed until 2015, Am. Compl. ¶ 6, the implied-warranty allegations are indeed untimely on their face—unless there was an explicit warranty as to future performance.

The Washington statute provides for the future-performance exception, that is, the limitations period starts later if there were explicit promises about continued quality of goods.[8] But an *implied* warranty is by definition not an *express* warranty. "[I]mplied warranties, by their very nature, never 'explicitly extend to future performance.'" *Holbrook, Inc. v. Link-Belt Const. Equip. Co.*, 12 P.3d 638, 641 n.5

---

[8]Danze does not challenge the timeliness of the *express*-warranty claims, because Danze explicitly warranted the future performance of the faucets "for as long as the consumer purchaser owns it." Am. Compl. ¶ 22. Indeed, for all that one can tell from the pleadings, Duncan Place might very well have discovered the breach after delivery but within the limitations period.

(Wash. App. Ct. 2000) (citing *Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1550 (9th Cir. 1994)). Yet Duncan Place contends that it is entitled to equitable tolling of the limitations period because "there was simply no way for the Association to have known of the latent and undisclosed defects in the … faucets at the time of installation." Pls.' Resp. Br. at 12.

This argument is rejected, in view of the narrowness of equitable tolling under Washington law. Equitable tolling is a remedy to be applied by Washington courts "sparingly" and "under narrow circumstances," where the predicates of "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff" are shown. *In re Bonds*, 196 P.3d 672, 676 (Wash. 2008) (citing *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998)). Although Duncan Place might believe that Danze's faucets failed to live up to promises, to qualify for the extraordinary relief of equitable tolling, Duncan Place needs to allege more by way of facts, specifically, a deception "intended to mislead [Duncan Place] so that [it] would be lulled into inaction, unable to bring a timely lawsuit." *Holbrook, Inc. v. Link-Belt Const. Equip. Co.*, 12 P.3d 638, 645 (Wash. App. Ct. 2000). All that Duncan Place points to is the allegedly false assurances about the quality of the faucets in the implied warranty *itself*—which is not an argument of deception to prevent a timely *lawsuit*. In other words, Duncan Place appears to conflate the underlying elements of a failure to satisfy a promise about product quality—that is, the substantive claim itself—with the further affirmative requirements of fraudulent behavior needed for tolling a limitations period. Simply characterizing a

warranty as deceptive is not enough to toll the claim; indeed, by this logic, most breach-of-warranty claims, which are often premised on misleading marketing, would be *automatically* eligible for equitable tolling. For these reasons, Duncan Place's implied-warranty claims are untimely under Washington law on the face of the amended complaint and must be dismissed.

### iii. Express Warranty

Danze seeks dismissal of both Duncan Place and Zisser's breach-of-express-warranty claims, arguing that the pleadings are insufficient under both Washington and New York law, because the amended complaint does not allege that the purported quality-related representations by Danze were in fact part of the bargain in the sale of the faucets. Defs.' Br. at 13. Danze's contention is right as to Zisser and New York law, but not as to Duncan Place and Washington law.

To begin with Duncan Place, Washington has adopted that part of the Uniform Commercial Code that says "[a]ny description of [ ] goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Wash. Rev. Code § 62A.2-313(1)(b). Danze focuses on the "basis of the bargain" element, contending that there is no allegation that Danze and Duncan Place ever adopted any express warranty of quality as part of the sale of faucets. This argument, however, places more weight on that phrase than it can bear. Danze's argument is undeveloped, but Danze apparently envisions an affirmative allegation that Duncan Place specifically relied on its promise as a prerequisite for the express-warranty claim. Some courts, like New York (as

discussed below), have historically embraced that argument. *See generally* Steven Z. Hodaszy, *Express Warranties Under the Uniform Commercial Code: Is There A Reliance Requirement?*, 66 N.Y.U. L. REV. 468, 484 (1991) (identifying cases). But the Court can find no authority that Washington courts have as well. Instead, Washington has adopted the U.C.C. on this issue, and the commentary accompanying this particular provision is clear that "[i]n actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods" so that "*no particular reliance* on such statements need be shown in order to weave them into the fabric of the agreement." U.C.C. § 2-313 cmt. 3 (emphasis added). In fact, "such affirmations, once made" are *presumed* part of the bargain, requiring "clear affirmative proof" to demonstrate otherwise. *Id*.

Also relevant is the fact that Duncan Place raises its express-warranty claim as an "end user" of the goods involved, rather than as a direct purchaser (at least, as strongly implied by the pleadings, which only speak of the faucets as having been installed in Duncan Place, presumably by a contractor or other direct buyer).[9] Despite the lack of direct privity, Washington courts recognize the right of such a plaintiff to raise an express-warranty claim against a "remote manufacturer" so long as the "manufacturer makes express representations, in advertising or otherwise, to a plaintiff." *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 731-32 (Wash. 1992) (citation omitted) (finding that manufacture "tells the ultimate customers, not its dealers, that its designs will be

---

[9]This point too must be clarified by any future permitted pleadings.

tailor-made and of highest quality" and that warranties therefore benefit the "end-user, and not just the first purchaser"). And even if the plaintiff is not the one negotiating the purchase of the warranted-item, all that is required is that the consumer "be aware of [the relevant] representations to recover for their breach." *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986). At the least, the amended complaint does reflect awareness of Danze's representations about its line of faucets.[10] Accordingly, Duncan Place has stated a claim for relief on the express-warranty claim.

The same cannot be said for Zisser. Unlike Washington, New York does require at least some showing of affirmative reliance by a purchaser on a seller's promise in order to sustain an express-warranty claim. *See CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1001 (N.Y. 1990). According to the pleadings, Zisser was a direct buyer of a Danze faucet (and not, like Duncan Place, an end-user, which might implicate a different standard under New York law), so she must include the specific allegation that she "relied on the statements or any advertisement at the time of [her] purchase." *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004); *see also Murrin v. Ford Motor Co.*, 303 A.D.2d 475, 477 (N.Y. App. Div. 2003) (plaintiff failed to plead circumstances of reliance). No such specific allegation is found in the amended complaint. Instead, the pleadings merely recite the purported warranty made by Danze in its written and online materials and the fact that Zisser purchased a Danze faucet. Am. Compl. ¶¶ 22, 46. There is no

---

[10]It is unclear from the Court's own non-exhaustive research so far what standards, if any, Washington courts might apply for *when* that awareness must exist for an end-user plaintiff to succeed on an express-warranty claim.

mention of reliance by Zisser on the warranty. *Gale*, 9 A.D.3d at 447 (dismissal of claim where plaintiff "nowhere states in his complaint that he saw any of [the seller's] statements before he purchased or came into possession of" the good). If the anticipated third amended complaint is allowed to be filed, Zisser may plead the missing element if she has a good faith basis to do so, but for now, the New York express-warranty claim is dismissed.

### iv. Implied Warranty

Next, the Court discusses Zisser's implied-warranty claim (remember, Duncan Place's implied-warranty claim is time-barred). Danze attacks Zisser's implied-warrant claim on the sole basis that the amended complaint does not actually allege that her faucets "manifest[ed] any problems." Defs.' Br. at 16. But Zisser does allege that she experienced "extensive problems" caused by the water supply hose, including retraction problems, fraying, and leaking, from her first Danze faucet, as well as the other Danze faucets she received later. Am. Compl. ¶¶ 46-48. Danze therefore offers no real challenge to Zisser's implied-warranty claim, which survives.

### b. Negligence/Strict Products Liability

Danze challenges Plaintiffs' causes of action under negligence and strict products liability by citing the economic-loss doctrine as a bar to these tort-based claims. Defs.' Br. at 16-20. As with the express-warranty claims, the result is a split-decision, this time with Duncan Place's claim surviving but Zisser's not.

There appears to be no material difference between the economic-loss doctrine under Washington and New York law. Its purpose "is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses," limiting a plaintiff to contract remedies only. *Alejandre v. Bull*, 153 P.3d 864, 868 (Wash. 2007). Under the doctrine, "tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue." *New York Methodist Hosp. v. Carrier Corp.*, 68 A.D.3d 830, 831 (N.Y. App. Div. 2009) (citations omitted). But economic losses as defined by this doctrine are "distinguished from personal injury or *injury to other property*." *Alejandre*, 153 P.3d at 684 (emphasis added); *see also Elec. Waste Recycling Grp., Ltd. v. Andela Tool & Mach., Inc.*, 107 A.D.3d 1627, 1629 (N.Y. App. Div. 2013) ("Where, however, there is harm to persons or *property other than the property that is the subject of the contract*, a plaintiff is entitled to recover in tort.") (emphasis added) (citations omitted). This distinction between an economic loss and injury to property applies to Duncan Place's claims and renders the economic-loss doctrine inapplicable as to the condo association.

In deciding whether the alleged injury is simply "consequential losses flowing" from a failure of the product to perform its intended purpose—and thus is an economic loss barred by the doctrine—or instead is injury to property, courts must consider the "nature of the defect," "the manner in which the injury occurred,"

and "the damages sought." *Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Int'l Corp.*, 752 N.Y.S.2d 767, 769 (N.Y. App. Div. 2002). Duncan Place has alleged extensive property damage to the condo building from the failed faucets, presumably the common areas under the association's common responsibility, serious enough to trigger insurance claims and affect coverage premiums. As suggested by the pleadings alone, it is impossible to categorically characterize such severe damage as mere economic-loss consequences of a failed faucet (although discovery will soon clarify the extent of the damage). For now, the allegations, even if relatively light on detail, plausibly suggest damage beyond just the faucet and hose itself, and instead sufficiently alleges damage to other property. *Stuart v. Coldwell Banker Commercial Grp., Inc.*, 745 P.2d 1284, 1291 (Wash. 1987) (distinguishing between internal defect of quality, governed by contract law, to tort-law duty of manufacturer not to "unreasonably endanger … other property").

Danze's extensive reliance on *Stieneke v. Russi*, 190 P.3d 60 (Wash. App. Ct. 2008), is misplaced. In *Steineke*, homeowners argued that damage to the interior of their property had been caused by defective roofing; the problem was, as the Washington appeals court found, the plaintiffs, who had purchased the entire home, were attempting to characterize that transaction as one for an individual component, the roof, in order to escape the economic-loss doctrine. *Id.* at 66-67. There is no such problem for Duncan Place, which brings a claim unequivocally based on the external damage caused by a discrete product, a faucet. *Stieneke* is therefore easily distinguishable, and Duncan Place's tort-based claims survive.

As for Zisser, however, the economic-loss doctrine does sink her tort-based claims. In contrast to the allegations of extensive common property damage made by Duncan Place, all Zisser complains of is that her faucet "drips roughly every thirty seconds and the steel braided supply hose has frayed." Am. Compl. ¶ 48. This describes nothing but "injury to the product itself" and minor consequential losses flowing [or perhaps dripping] therefrom." *Hodgson*, 752 N.Y.S.2d at 769. If Zisser can make a good faith allegation otherwise, she may do so in any allowed future pleadings, but for now, her tort-based allegations are dismissed without prejudice.

### c. Breach of Contract

Danze next seeks dismissal of Plaintiffs' claims for breach of contract. To start with Duncan Place, the parties duel over whether the purported contract terms were unconscionable, but overlook a threshold issue that makes the enforceability discussion beside the point. It is elementary that to bring a contractual claim, a plaintiff must demonstrate that it is either a direct party to a contract or an intended beneficiary with the attendant right to sue on a promisor's obligation. *See Postlewait Const., Inc. v. Great Am. Ins. Companies*, 720 P.2d 805, 806 (Wash. 1986). As discussed in the context of the express-warranty claim, Duncan Place makes no allegation that it has any kind of contractual privity with Danze, only that Danze's faucets were once installed in its building; that state of affairs may be enough to assert a claim for breach of express warranty, but it is insufficient for breach of contract. *Cf. Warner v. Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. App. Ct. 2005) ("[A] property owner is generally not a third-

party beneficiary of a contract between the general contractor and a subcontractor.").

As for Zisser, by contrast, there is no question that she sufficiently alleged privity with Danze, because she directly purchased a Danze faucet. But she too fails to state a claim for breach of contract because she points to no contractual provision, either written or verbal, aside from reiterating the alleged general warranty made by Danze, that the company allegedly breached. *See, e.g.*, *Salomon v. Citigroup Inc.*, 123 A.D.3d 517, 517 (N.Y. App. Div. 2014) (dismissing breach-of-contract claim "predicated upon an alleged implied warranty" that "has no support in the language" of an actual contract). Plaintiffs make no effort to argue otherwise or defend against dismissal of Zisser's contract claim in their response brief. Accordingly, Zisser's contract cause of action, like Duncan Place's, is dismissed.

### d. Unjust Enrichment

The sole asserted basis for Danze's motion to dismiss Plaintiffs' claim for unjust enrichment is that this theory of recovery, which is an extraordinary one in equity, is improper where an adequate remedy at law is available. Defs.' Br. at 21-22. This contention is rejected. It is true that Plaintiffs also seek recovery of monetary damages under non-equitable theories and an eventual award on one of these bases may well preclude a judgment for unjust enrichment, but at the pleadings stage there is no barrier to a plaintiff pleading several causes of action, arising under law and equity, as alternative avenues of recovery (and this applies both under Washington law and New York law). *See, e.g.*, *Porter v. Boisso*, — P.3d

—, 2015 WL 3755024, at *5 (Wash. Ct. App. June 16, 2015) (treating the pleading of unjust enrichment claim as alternative to other contract claims as par for the course); *Loheac v. Children's Corner Learning Ctr.*, 51 A.D.3d 476, 857 (N.Y. App. Div. 2008) ("Plaintiff was not precluded from bringing an action for breach of contract and, as alternative theories, quantum meruit and unjust enrichment.") (citations omitted). Danze might have a separate basis to challenge the unjust-enrichment claims as failing to state a claim; if so, Danze should explain those grounds in any subsequent dismissal motion. For now, Danze's argument that unjust enrichment cannot be pled in the alternative in the manner Plaintiffs have is rejected, and the motion to dismiss them is denied.

### 3. Claim under New York General Business Law

Finally, Danze moves to dismiss the claim brought under Section 349 of the New York General Business Law by Zisser. That consumer-protection provision prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). Danze is correct that the pleadings on their face do not support a claim under Section 349.

"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000) (citations omitted). The final element is Zisser's undoing here: it means in effect that the plaintiff "must show that the defendant's 'material deceptive act' caused the injury."

*Id.* at 612 (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741 (N.Y. 1995)). Although establishing causation is not necessarily the same as reliance, which proved the fatal flaw in Zisser's express-warranty claim, it does also require at minimum a showing of some connection between the complained-of conduct and the harm suffered. *See id.* (explaining that reliance is not an element of a Section 349 claim, although causation, which is a "twin concept," is a required element). As already explained during the warranty discussion, the pleadings currently present two discrete allegations: that Danze made certain promises about faucet-quality and that Zisser purchased a Danze faucet, leaving a conspicuous factual hole instead of any attempt to explain how they relate. As such, the amended complaint provides no plausible allegation to think that Zisser's harm was caused by Danze's representations because, for all the pleadings suggest, she could have bought the faucet completely oblivious to any such promises. The Section 349 claim is therefore dismissed, with the same condition as discussed above: Zisser may propose an amendment to the complaint that fills the factual gap.

## IV. Conclusion

For the reasons discussed, Defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss for Duncan Place's lack of standing is granted in part and denied in part: Duncan Place lacks associational standing to sue but may sue on its own behalf for damage incurred to the common areas of the building under its responsibility. To summarize the disposition of the Rule 12(b)(6)

arguments: the motion to dismiss the claims for breach of express warranty (about the quality of the faucets) is denied as to Duncan Place and granted without prejudice for Zisser to fix her pleadings if another amended complaint is allowed; the motion to dismiss the claims for breach of implied warranty of merchantability is granted as to Duncan Place on timeliness grounds, and denied as to Zisser; the motion to dismiss the negligence and products-liability claims is denied as to Duncan Place and granted without prejudice for Zisser to possibly amend; the motion to dismiss the unjust-enrichment claims is denied without prejudice to renewal by Danze if it can articulate better grounds in support; and the motion to dismiss the New York statutory claim is granted without prejudice to possible amendment of pleadings by Zisser.

Plaintiffs may file a motion for leave to file a second amended complaint, assuming that Duncan Place will seek to assert the claims of the individual unit owners assigned to it and Zisser has a good faith basis to fix the deficiencies discussed. Any proposed amended complaint must, however, bear in mind the decisions the Court makes here on the scope of permissible claims. The motion for

leave to amend should be filed no later than September 29, 2015. The status hearing of October 1, 2015 will remain in place.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 15, 2015