DUNCAN PLACE OWNERS                    )
ASSOCIATION, on its own behalf and as  )
assignee of Association members JAMES  )
WEST, STEPHEN OKAWA, ELIZABETH         )
K. SELLECK, MARIYE WICK SORENSON,      )
CASSANDRA JUNG, CATHY TAN, DAVID       )        No. 15 C 01662
HANSON, KAI SHI HSU, COLBY WICK,       )
JUNWON SU, LEE WEST, STEPHANIE         )
TRAN, MAGGIE TANG, HSIANG JUNE         )        Judge Edmond E. Chang
CHEN, XUE CHEN, TERRY L. DAY, FUNG     )
MING CHAN, HARRY R. CALBOM IV,         )
JOHN SPACE, JOHN CHANG, IMAHN          )
MOIN, JENNIE LE, PETER J. WU, NAOMI    )
AVERY, JERILYN L.C. YOUNG,             )
GWENDOLYN HERR GLASS, JOHN H.          )
FINEFROCK, DONALD BAIN                 )
MACKINTOSH III, JAMES R. LUBY,         )
TSZ CHUN LO, CINDY CHAN, TAM,          )
MATHEW CHAM, ALI KHREIS, SHUAI         )
WANG, DOUGLAS STUMBERGER, JIA          )
PING WU, ANAND PANDIT, TONEY           )
JIANG, KRISHNAN GAWRY, JUAN-FU         )
CHEN; and WEI-LING CHEN; and           )
DANIEL DONNELLY,                       )
individually and on behalf of others   )
similarly situated,                    )
                                       )
            Plaintiffs,                )
                                       )
      v.                               )
                                       )
DANZE, INC., f/k/a GLOBE UNION         )
AMERICA CORPORATION, and GLOBE         )
UNION GROUP, INC.,                     )
                                       )
            Defendants.                )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Duncan Place Owners Association, the forty-one individual condo owners who have assigned their claims to Duncan Place, and Daniel Donnelly bring this class action against Defendants Danze, Inc. and Globe Union Group, Inc. (for convenience's sake, Defendants will be referred to collectively as "Danze"), alleging that Danze sold them faulty faucets and engaged in fraudulent and deceptive marketing practices.[1] Danze, Inc. and Globe Union Group, Inc. move to dismiss [R. 61][2] Plaintiffs' Second Amended Complaint [R. 60] under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained below, Danze's motion to dismiss is granted in part and denied in part.

## I. Background

Danze, Inc. and Globe Union Group, Inc. previously moved to dismiss [R. 32] Plaintiffs' First Amended Complaint, arguing that Duncan Place lacked associational standing to sue on behalf of individual faucet-consumers under Federal Rule of Civil Procedure 12(b)(1), and that the amended complaint failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). At that time, only Duncan Place and Phyllis Zisser were named as plaintiffs. R. 21, Am. Compl. The Court granted the motion in part and denied it in part. R. 56, 09/15/15 Opinion. The Court agreed that Duncan Place lacked associational standing to bring suit on behalf of the individual condo owners, all of whom had suffered varying degrees of

---

[1]This Court has jurisdiction over this purported class action under 28 U.S.C. § 1332(a)(2)(A), as the amount in controversy well exceeds $75,000 and the parties are of diverse citizenship. R. 60, Second Am. Compl. ¶ 15. The Court also has jurisdiction under 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds $5 million and "Plaintiffs and substantially all Class Members are citizens of [one] State and defendant GUIC is a citizen of a foreign state." *Id.*

[2]Citations to the record are indicated as "R." followed by the docket number.

damage due to the allegedly faulty Danze faucets, and that some of the amended complaint's eight counts failed to state a claim. *Id.* The Court disagreed, however, that all counts against both Duncan Place and Zisser required dismissal. *Id.*

Since then, the parties have taken several steps: forty-one of the individual condo owners at Duncan Place Condominium (Duncan Place's condo-complex is located in Washington state) assigned their claims to Duncan Place, R. 60, Second Am. Compl. ¶ 7; Daniel Donnelly, an Illinois citizen, joined the case as a named plaintiff, *id.* ¶ 9; Phyllis Zisser accepted a Rule 68 Offer of Judgment, and was dismissed from the case with prejudice, R. 70, Stipulation of Dismissal; R. 71, 03/29/16 Minute Entry; and Duncan Place and Donnelly together (and at the time, Zisser as well) filed a Second Amended Complaint, R. 60, Second Am. Compl.

Because the prior opinion describes the allegations of this case in detail, only the most pertinent facts are discussed here, as well as those facts that are new to the Second Amended Complaint. (For convenience's sake, the Court will refer to the Second Amended Complaint simply as the Complaint going forward.) Danze, Inc., a subsidiary of Globe Union Group, Inc., markets and sells faucets in the U.S. and abroad, through wholesalers, retail outlets, and on the internet. Second Am. Compl. ¶¶ 12, 21. Danze advertises its faucets as "safe, reliable, and worry-free," stating that customers "never have to worry about a drip." *Id.* ¶ 23. Online, Danze emphasizes the "high level of craftsmanship" of its faucets; it describes its kitchen faucets as "top-notch without a top-notch price tag" and invites consumers to "examine the fit, finish and design of [Danze's] products to appreciate their superior

quality." *Id.* ¶ 24. Danze also highlights the longevity of its faucets, stating that it "design[s] and engineer[s] [its] products to meet exacting standards," and that when consumers choose Danze, "[they] choose a high-quality faucet that can … [be] depend[ed] on for many years to come." *Id.* For all of its faucets, Danze offers a "limited lifetime warranty," warranting to "the original purchaser" that "all parts of the Danze faucet [will] be free from defects in material and workmanship, for as long as the consumer purchaser owns it," and that Danze will "replace 'free of charge', during the warranty period, any part that proves defective in material and/or workmanship under normal residential application." *Id.* ¶ 25 (citing Danze's service warranty on its website, http://www.danze.com/service/warranty/).

While Danze touts its faucets' superior quality and reliability, Plaintiffs assert that Danze's faucets fall well short of those representations. Plaintiffs contend that "[p]urchasers of Danze faucets make [their] purchasing decisions in part and in reliance []on" Danze's representations and warranty. Second Am. Compl. ¶ 41. And while those representations and warranty lead reasonable consumers to believe that Danze's faucets are "long lasting," "maintenance free," "premier product[s]," in reality, they "suffer from defects … that cause [them] to fail well prior to their warranted lifetime." *Id.* ¶¶ 25-27. Plaintiffs highlight one defect in particular: the faucets' defective, steel-braided, water supply hoses, which are allegedly "made from an inferior low nickel stainless steel alloy." *Id.* ¶ 29. Typically, when flexible, steel-braided hoses are used in plumbing applications, Plaintiffs explain, they are manufactured out of a stainless steel alloy that contains a higher

nickel content. *Id.* ¶ 31. According to Plaintiffs, Danze's decision to use a stainless steel alloy with a lower nickel content is what "makes [Danze's] hoses susceptible to stress corrosion cracking" and what "causes the hoses … to fail … prematurely." *Id.* ¶¶ 29, 31. Despite knowing about this defect, Plaintiffs allege that Danze has continued to make false and misleading statements on its website and in its advertisements about its faucets' design, reliability, and performance (as well as omitting information about the faucets' problems). *Id.* ¶¶ 36-40. Plaintiffs further allege that Danze has failed to honor its warranty promises. *Id.*

In Duncan Place Condominium, contractors installed Danze faucets in all 63 units, specifically in the bathrooms. Second Am. Compl. ¶ 46. According to Duncan Place, "[a] number of these faucets have failed," resulting not only in "severe property damage," but also in Duncan Place needing "to pay the deductible amount under its property insurance policy for each loss," and in Duncan Place's insurance premiums "greatly increas[ing]." *Id.* Duncan Place asserts that Danze failed to repair or replace the faucets in accordance with the terms of its warranties, or to reimburse Duncan Place for the resulting damage. *Id.* ¶ 47. In addition to Duncan Place's own claims, forty-one of the individual condo owners who have allegedly suffered damages from failed Danze faucets have assigned their claims to Duncan Place as well. *Id.* ¶ 7.

Daniel Donnelly, the other named Plaintiff, purchased a Danze kitchen faucet online from Home Depot in March 2015. Second Am. Compl. ¶ 51. Shortly after installation, the steel-braided hose on that faucet allegedly began leaking and

caused water damage to Donnelly's surrounding cabinetry. *Id.* Donnelly sent Danze a letter informing Danze of the problem, as well as the resulting damage, and asking Danze to reimburse him for the damages he suffered from the defective faucet. *Id.* ¶ 52. A few days later, Danze instructed Donnelly to submit a warranty claim, which Donnelly did. *Id.* That warranty claim is still pending. *Id.*

Duncan Place and Donnelly seek to bring this case as a class action on behalf of the same proposed class that was described in the first amended complaint: "original consumer end-users of Danze brand faucets installed in homes, residences, buildings, or other structures physically located in the United States, in which Danze faucets are or have been installed since 2000." Second Am. Compl. ¶ 54. Proposed class-eligible faucets include "all faucets incorporating a steel braided supply house manufactured or distributed by [Danze]." *Id.* The Complaint further proposes multiple subclasses of applicable consumers, just as the first amended complaint did, although this time it includes not only Washington and New York subclasses, but also an Illinois subclass. *Id.* ¶¶ 55-57. Plaintiffs assert several substantive claims, all of which are similar to the claims included in the first amended complaint and all of which arise under state law: breach of express warranty, breach of implied warranty of merchantability, negligence, strict products liability, and unjust enrichment; in addition, Plaintiffs assert a claim for the Illinois subclass under Illinois's Consumer Fraud and Deceptive Business Practices Act. *Id.* ¶¶ 70-115. Danze now moves to dismiss the Complaint against all named-Plaintiffs under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 61, Mot. to

Dismiss. Danze again challenges Duncan Place's ability to bring suit on behalf of the individual unit owners. R. 64, Defs.'s Br. at 5. It also challenges the standing of the assigning unit owners, the ripeness of Donnelly's claims, and whether any of the Plaintiffs' causes of action state a claim on which relief can be granted. *Id.* at 5-24.

## II. Legal Standards

Danze brings its motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint, *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990), while a Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction, *Hallinan*, 570 F.3d at 820; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). When reviewing a motion to dismiss under either rule, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long*, 182 F.3d at 554.

To survive a Rule 12(b)(6) motion, a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations contained in the complaint must also be sufficient—when taken as true—to "raise a right to relief above the speculative level." *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While

"[d]etailed factual allegations" are not required, the plaintiff must allege facts that "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Only the complaint's factual allegations are entitled to the assumption of truth; mere legal conclusions are not. *Id.* at 679.

Surviving a Rule 12(b)(1) motion for lack of subject matter jurisdiction is more difficult. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Pfizer Inc. v. Apotex Inc.*, 726 F. Supp. 2d 921, 927 (N.D. Ill. 2010). The plaintiff bears the burden of establishing that a district court has jurisdiction over an action. *United Phosphorus, Ltd.*, 322 F.3d at 946; *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2011). "If subject matter jurisdiction is not evident on the face of the complaint, [then] the … Rule 12(b)(1) [motion is] analyzed [like] any other motion to dismiss, by assuming for purposes of the motion that the allegations in the complaint are true." *United Phosphorus, Ltd.*, 322 F.3d at 946. But "if the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, [then] the movant may use affidavits and other material to support the motion." *Id.*; *Apex Digital, Inc. v. Sears, Roebuck & Co*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

### III. Analysis

As a threshold matter, the Court must determine what information it may consider when evaluating this dismissal motion. Plaintiffs attach several documents to their response brief—none of which were attached to, or specifically referenced

in, Plaintiffs' complaint—that presumably, they would like the Court to rely on in deciding Danze's motion. R. 65, Pls.'s Resp. Br. They first attach a Declaration from Michael C. Walker, the manager of Duncan Place Condominium Association. R. 65, Exh. 1, Walker Decl. ¶¶ 1-2. Walker's affidavit describes the three faucet leaks that occurred at Duncan Place, and the specific units affected by those leaks. *Id.* ¶¶ 3-4. It also describes (and attaches documents showing) the increased insurance costs that the association encountered due to the leaks. *Id.* ¶¶ 5-6. Plaintiffs next attach a Declaration from Benjamin C. Borland, a construction consultant. R. 65, Exh. 2, Borland Decl. ¶¶ 1-4. Borland inspected Danze faucet assemblies in 49 of Duncan Place's 63 units, and found eight to have frayed hoses. *Id.* ¶ 3. Finally, Plaintiffs attach a Declaration from Dale R. Clark, a mechanical engineer who analyzed one of the failed faucet assemblies from Duncan Place. R. 65, Exh. 3, Clark Decl. ¶ 1, Borland Decl. ¶ 4. Clark's affidavit states that the faucet's steel-braided supply hose failed "due to stress corrosion cracking," something the faucet was more susceptible to because of the "alloy used in manufacturing." Clark Decl. ¶ 3. Clark further concluded that because three of the faucets installed at Duncan Place failed in the same way, an "imminent danger" exists "that the remaining Danze hoses at Duncan Place may suffer the same type of failure." *Id.* ¶ 4.

Plaintiffs would like the Court to consider these documents when ruling on Danze's dismissal motion, and in particular when evaluating Danze's Rule 12(b)(1) arguments. Pls.'s Resp. Br. at 4 n.4. Danze objects, asserting that at this stage of the litigation, and based on Danze's *facial* attack on the Complaint, it is

inappropriate for the Court to look beyond the allegations in the Complaint. R. 68, Defs.'s Reply Br. at 2-4. The Court agrees, at least under the circumstances presented here.[3]

When evaluating a Rule 12(b)(6) motion, a court may consider—in addition to the allegations contained in the complaint—"documents incorporated into the complaint by reference, and matters of which [the] court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011). But outside of those categories of additional material, Rule 12(d) mandates that "[i]f, on a motion under Rule 12(b)(6) … , matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added); *see also Facebook, Inc.*, 819 F. Supp. 2d at 770.

---

[3]Plaintiffs discuss using the declarations to rebut Danze's Rule 12(b)(1) arguments, not Danze's Rule 12(b)(6) arguments, noting "that consideration of evidence extrinsic to the pleadings is appropriate under Rule 12(b)(1)." Pls.'s Resp. Br. at 4 n.4. But while Plaintiffs do not directly cite to the declarations when responding to Danze's Rule 12(b)(6) arguments, in their responses to those arguments they do reference facts that can only be found in the declarations. For example, in responding to Danze's contention that Plaintiffs have failed to state a claim for negligence or strict-products liability, Plaintiffs reference the three faucet leaks that occurred at Duncan Place and the dates of those leaks. Pls.'s Resp. Br. at 19. These facts, however, cannot be found in Plaintiffs' complaint; they can only be found in Walker's Declaration. Walker Decl. ¶¶ 3-4. Because Plaintiffs rely on this evidence to rebut both Danze's Rule 12(b)(1) and its Rule 12(b)(6) arguments, the Court addresses whether it may consider this evidence in both instances.

Here, Plaintiffs do not contend that these declarations are incorporated by reference into the Complaint, nor do they contend that the Court may take judicial notice of them, and for good reason: the Complaint does not refer to any of these affidavits, nor does it specifically reference Walker, Borland, or Clark. The Complaint does refer to Clark in the abstract, stating that Plaintiffs hired an "engineering consultant" to "conduct[] a failure analysis on Plaintiff Duncan Place's faucets." Second Am. Compl. ¶ 29. The Complaint then goes on to describe the "engineering consultant's" findings, which do match the findings detailed in Clark's affidavit. *Id.* ¶¶ 29-34. But Clark's *affidavit* itself is never "referred to in the [Plaintiffs'] complaint," nor does it appear to be so "central to [Plaintiffs'] claim[s]" that it can be considered incorporated into the Complaint. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). It is one thing to consider the factual allegations on Clark's findings that are actually asserted in the Complaint, and quite another thing to consider the affidavit. The inevitable conclusion then is that the Court may only evaluate these affidavits in conjunction with Danze's Rule 12(b)(6) motion if the Court converts Danze's dismissal motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). The parties do not ask the Court to do this, nor is the Court inclined to do so on its own. This case is a purported class action, and involves six separate claims for relief. Discovery would certainly be needed on many of these claims before the Court could rule on any summary judgment motion. Thus, the Court rejects Plaintiffs' invitation to consider these declarations when evaluating Danze's Rule 12(b)(6) arguments.

It is similarly inappropriate for the Court to consider these affidavits, and their supporting documents, when evaluating Danze's Rule 12(b)(1) arguments. Although a court is allowed to look beyond the allegations contained in the complaint in certain instances when considering a Rule 12(b)(1) motion, *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998), a court may generally do so only when jurisdiction is being challenged as a factual matter, *Reid L. v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004); *Hay v. Ind. State Bd. of Tax Comm'nrs*, 312 F.3d 876, 879 n.2 (7th Cir. 2002) ("[Plaintiffs] are correct when they note the difference between a facial and factual attack on jurisdiction. Only in the latter case does the court look beyond the allegations of the complaint."); *Lewert v. P.F Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). In this case, Danze is not mounting a *factual* attack, but is instead challenging whether the Complaint, on its *face*, contains allegations sufficient to show that Duncan Place and the assigning condo owners have standing. Put another way, Danze is not arguing that the jurisdictional facts alleged in the Complaint are untrue, but rather that the Complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Apex Digital, Inc.*, 572 F.3d at 443-44; *United Phosphorous, Ltd.*, 322 F.3d at 946. Under these circumstances, consideration of extrinsic evidence is improper. Having concluded that none of Plaintiffs' attached declarations may be considered in conjunction with Danze's motion to dismiss, the Court now evaluates Danze's motion taking into account only those facts alleged in the Complaint.

## A. Rule 12(b)(1) Challenge to Jurisdiction

Danze raises several jurisdictional challenges under Federal Rule of Civil Procedure 12(b)(1). Danze challenges Duncan Place's ability to bring suit on behalf of the individual condo owners; the individual condo owners' standing, and in particular, whether they have alleged an injury-in-fact; and finally, the ripeness of Donnelly's claims. Defs.'s Br. at 5-10. The Court addresses each argument in turn.

### i. Duncan Place's Ability to Bring Suit on Behalf of the Unit Owners

Danze's first argument relates to whether Duncan Place has the authority to bring suit on behalf of the 41 unit owners who have assigned their claims to Duncan Place. Defs.'s Br. at 5-7. In the prior opinion, the Court held that Duncan Place lacked associational standing to bring suit on behalf of the individual condo owners because each owner suffered individualized damages. 09/15/15 Opinion at 7-10. After the opinion issued, 41 of the individual unit owners assigned their claims to Duncan Place, no doubt in an attempt to fix the problem with Duncan Place's lack of associational standing.

Danze contends that even with these new assignments, Duncan Place still has a standing problem. Pointing to the Seventh Circuit's decision in *Nuclear Engineering Company v. Scott*, 660 F.2d 241 (7th Cir. 1981), Danze argues that the unit owners' assignments are untimely because they occurred after Plaintiffs had already filed their original complaint (and indeed, after they had filed their first amended complaint). Defs.'s Br. at 5; *Nuclear Eng'g Co.*, 660 F.2d at 248 ("Jurisdictional questions are answered by reference to the time of the filing of an

action[.]"). Danze also points to the dissent in *Northstar Financial Advisors, Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015), stating that "it is not permissible to grant leave to amend a complaint in an effort to cure a standing defect (which is exactly what Plaintiffs are seeking to do in the instant case)." Defs.'s Br. at 6. Duncan Place argues in response that the assignments are timely because Plaintiffs' amended pleading (that is, Plaintiffs' second amended complaint) relates back to the filing of Plaintiffs' original complaint under Federal Rule of Civil Procedure 15(c). Pls.'s Resp. Br. at 2-4. The Court concludes that these assignments are proper, but for different reasons than offered by Plaintiffs.

It is well-established that "[t]he assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275, 285 (2008); *Northstar Fin. Advisors, Inc.*, 779 F.3d at 1047 (explaining that "the assignee of a cause of action stands in the shoes of the assignor, … and unquestionably has the same standing to file a complaint that the assignor could have filed"). So, assuming the 41 unit owners properly assigned their claims to Duncan Place, Duncan Place has standing to bring suit on behalf of those owners. (Of course, the assignors would also need to have suffered an injury-in-fact, something Danze separately challenges and the next issue the Court tackles.) But the pertinent question here is whether the timing of these assignments—and in particular, whether the fact that they occurred *after* Plaintiffs filed suit—prevents

Duncan Place from bringing suit on behalf of the assignors. The Court concludes that the post-suit assignment is not a problem for standing here.

Because these assignments were not executed until after the original complaint was filed, any references in the Complaint to the assignments of the 41 unit owners must be treated as a supplemental pleading under Federal Rule of Civil Procedure 15(d). Rule 15(d) provides: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d); *see also FDIC v. Knostman*, 966 F.2d 1133, 1138 (7th Cir. 1992). The standard that governs motions to supplement the pleadings under Rule 15(d) is the same as that which governs motions to amend the pleadings under Rule 15(a). *Glatt v. Chi. Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996);; *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 2010 WL 151998, at *5 (N.D. Ill. Jan. 14, 2010). Thus, just as with Rule 15(a) motions, Rule 15(d) motions "should be freely granted when doing so will promote the just disposition of the case and will not cause undue prejudice or delay or trial inconvenience." *Medtronic, Inc. v. Siemens-Pacesetter, Inc.*, 1992 WL 88452, at *1 (N.D. Ill. Apr. 27, 1992). But if delay, bad faith, past failure to cure deficiencies, undue prejudice, or futility are shown, the motion should be denied. *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (addressing Rule 15(a)).

Danze contends that Duncan Place and the unit owners are prohibited from supplementing their complaint in this way: to cure a jurisdictional defect like lack

of standing. But Rule 15(d) allows a pleading to be supplemented "even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d). *See also id.* Note to 1963 Amendment ("[In] some cases … plaintiffs have sometimes been needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief. Under the amendment the court has discretion to permit a supplemental pleading despite the fact that the original pleading is defective."). Courts have also permitted parties to cure jurisdictional defects under somewhat similar circumstances to those presented here. *See e.g., Rowe v. United States Fidelity & Guar. Co.*, 421 F.2d 937, 944 (4th Cir. 1970) (concluding that defective complaint could be cured with supplemental pleading of assignment that occurred after the original complaint was filed); *Meta-Film Assocs., Inc. v. MCA, Inc.*, 586 F. Supp. 1346, 1351-52 (C.D. Cal. 1984) (finding that subsequent recordation of assignment with Copyright Office cured jurisdictional defect). *See also Blanas v. Alwan*, 1995 WL 398850, at *3 (N.D. Ill. July 3, 1995); *U.S. Envtl. Prods., Inc. v. Infilco Degremont, Inc.*, 611 F. Supp. 371, 374 n.3 (N.D. Ill. 1985) ("Under [Rule] 15(d), supplemental pleadings alleging transactions or occurrences that have happened since the date of the original pleading may be allowed, even though the original pleading is defective. This is true even when jurisdiction is lacking at the time the complaint was filed but the subsequent occurrences now confer jurisdiction."). It is true that standing is to be determined at the time the complaint is filed. *Nuclear Eng'g Co.*, 660 F.2d at 248. But in this case, whether Duncan Place

or the unit owners have standing to pursue their own claims has never depended on acts occurring *after* the filing of the initial complaint. The allegations in the Complaint supporting both Duncan Place's and the unit owners' claims rely entirely on facts occurring *before* the filing of the original complaint. All that is really at issue with the supplemental pleading is whether Duncan Place can bring the unit owners' claims for them or whether the unit owners must bring their own claims. Under these circumstances, the better exercise of the Court's discretion is to allow Plaintiffs to supplement the Complaint with the unit owners' assignments to cure any jurisdictional defect. *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1338 (7th Cir. 1985) ("A Rule 15(d) motion to supplement the pleadings is properly addressed to the discretion of the trial court."); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985).

As an initial matter, the assignments are not futile. The unit owners have the right to bring these claims and to attempt to recover any damages they may have suffered from the installation of Danze faucets in their respective units. "It would be wasteful and inefficient to require [the unit owners] to go through the formality and expense of instituting a new action solely because the assignment[s] … w[ere] executed after the filing of the original [c]omplaint." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 412 (E.D. Va. 2011) (citing *Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002)). *See also* Fed. R. Civ. P. 15(d), Note to 1963 Amendment. The Court will not require the unit owners (through the assignments to Duncan Place) to needlessly file a separate suit.

Danze will also not be prejudiced by these assignments. Danze has known from the start of this litigation that the unit owners are interested in pursuing their claims. Duncan Place has been attempting to gain standing on their behalf since the original complaint. R. 1, Compl. ¶ 7. Danze has also known from the start the bases of the unit owners' claims; the claims in this case have essentially remained the same since the beginning. *See generally id.* All that has remained in flux is whether the unit owners must represent their own interests, or whether Duncan Place may represent their interests (through assignment or otherwise). Given the current posture of this case, and the fact that Danze has been aware of the unit owners and their claims since the start of this litigation, allowing these assignments would not be unduly prejudicial to Danze. Exercising its discretion, the Court concludes that the assignments were proper and that Duncan Place may proceed on the unit owners' behalf.

Finally, although the Complaint may be supplemented with these assignments, it is worth clarifying that the unit owners' assignments do *not* give Duncan Place standing retroactive to the date of the initial complaint, as Plaintiffs suggest. Rule 15(c) does not fit here. Rule 15(c) provides that an amendment "relates back to the date of the original pleading when … [it] asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Although the unit owners' underlying claims may have arisen out of the same conduct set out in the initial complaint, the assignments do not. Thus, the

assignments only give Duncan Place standing to pursue the claims of the 41 unit owners as of the date of *this Complaint*. Accordingly, any statute of limitations defense raised by Danze (if it is ever proper to raise one) will be measured from the date this Complaint was filed, not the date the original complaint was filed.

### ii. Standing of the Unit Owners

This does not end the analysis of whether Duncan Place has standing to pursue the unit owners' claims, however. As alluded to above, Danze also argues that the unit owners lack standing because they have not alleged an injury-in-fact. Defs.'s Br. at 7-9. To have Article III standing, a plaintiff must have suffered an "injury-in-fact," or "an invasion of a legally protected interest" that is "concrete and particularized," and not merely "conjectural" or "hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *DH2, Inc. v. United States S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005). In other words, the Complaint must establish that the assignors "[have] sustained or [are] immediately in danger of sustaining some direct injury." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (internal quotation marks omitted); *see also DH2, Inc.*, 422 F.3d at 596. The Complaint does this. Plaintiffs identify the 41 owners who have assigned their claims to Duncan Place. Second Am. Compl. ¶ 7. Plaintiffs allege that "Danze faucets were installed in all 63 units" at Duncan Place Condominium. *Id.* ¶ 6. And Plaintiffs allege that "[h]ad [Danze] not withheld and omitted important information about the design, reliability, and performance of Danze faucets, Danze faucets would not have been installed in the Duncan Place Condominium ... and Plaintiffs ... would not have

been saddled with the responsibility to repair property damage caused by the defective Danze faucets, including the cost to replace said faucets." *Id.* ¶ 44. These allegations are sufficient to show that the assignors (that is, the unit owners) have sustained some direct injury, and that they have a personal stake in this litigation. To be clear, Plaintiffs should have provided more detail on the injuries allegedly sustained by the unit owners. But fortunately for Plaintiffs, the allegations in the Complaint provide just enough detail to establish that the unit owners have suffered an injury-in-fact.

In arguing against this conclusion, Danze confuses the standard for proving damages on the *merits* and the standard for establishing Article III *standing*. At this stage, Plaintiffs need only establish "that [the assignors] ha[ve] a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to [them]," *Raines v. Byrd*, 521 U.S. 811, 819 (1997); Plaintiffs need not prove up the actual harm suffered by each assignor—at least not yet. Plaintiffs have met this standard; the Complaint alleges that the assignors suffered some sort of damage due to the installation of faulty Danze faucets in their condo units. Injury-in-fact is sufficiently alleged.

### iii. Ripeness of Donnelly's Claim

Danze's last 12(b)(1) challenge is to the ripeness of Donnelly's claims. Danze argues that "[b]ased on the allegations contained in the [Complaint]," Donnelly's claims are not yet ripe. Defs.'s Br. at 9. In particular, Danze contends that because Donnelly's warranty claim remains pending, it is not yet clear whether Danze will

reimburse Donnelly for his faulty faucet or for the property damage to his cabinetry. *Id.* at 9-10. Until Donnelly knows Danze's response to his warranty claim, Danze argues, Donnelly's claims are not ripe. *Id.*

The ripeness doctrine seeks to confine courts to their proper role as the branch of government charged with deciding actual controversies, and not abstract legal questions. 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 3532.1 (3d ed.). Courts rely on the ripeness doctrine "to determine whether a dispute has yet matured to a point that warrants decision." *Id.* § 3532. In deciding this question, the Court's primary concern "is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.*; *Tex. v. United States*, 523 U.S. 296, 300 (1998); *Rock Energy Coop v. Vill. of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010); *Alcan Aluminum Ltd. v. Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1295 n.1 (7th Cir. 1984) ("concern with the contingency of future events is at the core of the ripeness doctrine"). If it does, then the case is not yet ripe.

Here, Donnelly's claims are ripe. Donnelly raises six claims in the Complaint: an express warranty claim, an implied warranty of merchantability claim, a negligence claim, a strict-products liability claim, an unjust enrichment claim, and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Second Am. Compl. ¶¶ 70-115. All of Donnelly's claims stem from his purchase of a Danze faucet at Home Depot for his kitchen that failed shortly after installation and that caused damage. *Id.* ¶ 51. He contends that his damages include not only

the cost of replacing the Danze faucet, but also the cost of restoring some of his kitchen cabinetry. *Id.* ¶¶ 51-53. Taking these allegations as true (as they must be for now), it is clear that Danze's ripeness argument fails for several reasons. First, Danze's warranty only covers the cost of replacing the faulty fixture; it explicitly states that it does *not* cover the cost of fixing any resulting property damage. *Id.* ¶ 25 (citing Danze's online warranty). So, even if Danze were to fulfill Donnelly's warranty request, Donnelly still would not be made whole, and would still have an interest in pursuing his claims. Second, Danze ignores Plaintiffs' allegation that Danze's warranties are themselves illusory because Danze either satisfies the warranty by replacing one defective product with another, or fails to fulfill its warranty requests at all. *Id.* ¶¶ 3, 77; Pls.'s Resp. Br. at 10. According to Plaintiffs, even if Danze were to replace Donnelly's faucet, Donnelly would still be left in the same position he is now—with a faulty fixture and a worthless warranty. His claims are thus not contingent on whether Danze fulfills Donnelly's warranty request. Finally, the Court notes that there must be some point at which Donnelly's claims are ripe even if his warranty request remains pending. Danze could opt never to respond to Donnelly's warranty request. Under Danze's proposed theory, this would mean that Donnelly would never be able to bring his claims. That cannot be correct.

Because Donnelly's claims are not contingent on some future event occurring (or not occurring), Donnelly's claims are ripe for purposes of Article III jurisdiction.

**B. Rule 12(b)(6) Challenge to Plaintiffs' Second Amended Complaint**

Apart from the jurisdictional issues, Danze also challenges all of Plaintiffs' claims on the merits under Federal Rule of Civil Procedure 12(b)(6). Defs.'s Br. at 10-24. Plaintiffs assert the following state-law claims in their Complaint: breach of express warranty, breach of implied warranty of merchantability, negligence, strict-products liability, and unjust enrichment; additionally, the Illinois subclass of Plaintiffs (including Donnelly) assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. Second Am. Compl. ¶¶ 70-115. The Court will address each claim in turn.

At the outset, however, the Court again addresses the issue of which state's law applies to these claims. The Court previously noted the necessity of conducting a choice-of-law analysis given the various state-law claims raised, as well as the different states where the faucet sales and harm allegedly occurred. 09/15/15 Opinion at 13-16. Looking to Illinois's choice-of-law rules (this Court's forum state), as it must, the Court held that the laws of the states that have the "most significant relationship" to the claims of each named-Plaintiff should apply. *Id.* at 16. At the time of the first amended complaint, that meant New York law applied to named-Plaintiff Zisser's claims and Washington law to named-Plaintiff Duncan Place's claims. *Id.* at 14-16. Now, however, Zisser is no longer a named-Plaintiff, while Donnelly, who is an Illinois citizen, is. But despite this change, the same Illinois choice-of-law principles apply, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006)

(explaining that in diversity actions, federal courts look to their forum state's choice-of-law rules); and the Court is again guided by the principle "that the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties," *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007); *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000). Thus, Duncan Place's claims will continue to be governed by Washington law, as will the claims of the assignors, all of whom are (or were) owners of units at Duncan Place's condo complex in Washington state. Second Am. Compl. ¶¶ 6-7. Donnelly's claims will be governed by Illinois law, the state in which Donnelly is a citizen and where the faucet was bought and installed. *Id.* ¶ 9. *See* Defs.'s Br. at 10 (reaching the same conclusion); Pls.'s Resp. Br. at 11 (same).

### i. Breach of Express Warranty Claim

In Count 1, Plaintiffs assert a breach of express warranty claim. Second Am. Compl. ¶¶ 70-78. Two promises are advanced as the basis for this claim. Plaintiffs assert that Danze warranted that it would (1) "provide an operational product for a particular warranty period," or (2) "replace the defective product 'free of charge.'" *Id.* ¶ 71. Previously, the Court held that only the first basis was supported as a factual matter by the pleadings (which at that time, was based on the first amended complaint). 09/15/15 Opinion at 17. Now, however, the Complaint includes sufficient allegations to challenge both warranties: quality and replacement. The Complaint includes allegations that Danze made an express warranty about the quality of the

faucets, namely, that they would "be free from defects in material and workmanship." Second Am. Compl. ¶ 25 (citing Danze's online warranty, which promises faucets "to be free from defects in material and workmanship, for as long as the consumer purchaser owns it"). The Complaint also alleges that Danze made an express warranty regarding the replacement of defective products, namely, that Danze would replace substandard faucets "'free of charge,' during the warranty period." *Id.* (citing Danze's online warranty, which promises that "Danze will replace, free of charge, during the warranty period, any part that provides defective in material and/or workmanship under normal residential application."). Thus, both alleged warranties now find factual support in the Complaint.

The Complaint does not specify which Plaintiffs are raising express warranty claims, so presumably all Plaintiffs are: Duncan Place, the individual unit owners, and Donnelly. Duncan Place's claim and the individual unit owners' claims are governed by Washington law, while Donnelly's claim is controlled by Illinois law. Both Washington and Illinois define an express warranty similarly, as an affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes a part of the basis of the bargain. *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash. App. Ct. 1997); *Wheeler v. Sunbelt Tool Co., Inc.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989). No particular words or forms of expression are necessary to create an express warranty, *Beckett v. F.W. Woolworth Co.*, 34 N.E.2d 427, 430 (Ill. 1941); *Hartman v. Barnes Grain & Feed Co.*, 284 P. 754, 755-56 (Wash. 1930), but the more specific a statement the more likely it is an

affirmation, *Cox*, 936 P.2d at 1198; *Fed. Signal Corp. v. Safety Factors, Inc.*, 886 P.2d 172, 178 (Wash. 1994) (en banc). Danze broadly challenges whether any of the statements included in the Complaint created an express warranty. It asserts that all of these statements are nothing more than mere puffery, or expressions of opinion, which do not rise to the level of express warranties. Defs.'s Br. at 12-14. The Court disagrees.

It is true that a statement of the seller's opinion as to the value of goods—for example, that they are "good quality," "the best," "in perfect condition," or require "few repairs"—generally does not result in an express warranty. *Redmac, Inc. v. Computerland of Peoria*, 489 N.E.2d 380, 382-83 (Ill. App. Ct. 1986); *Fed. Signal Corp.*, 886 P.2d at 179. But the statements at issue here are more than just an expression of Danze's opinion. Danze specifically "warrant[s]"—in its online service warranty, no less—that its faucets will be "free from defects in material and workmanship, for as long as the consumer purchaser owns it," and that Danze will "replace 'free of charge,' during the warranty period, any part that proves defective in material and/or workmanship under normal residential application." Second Am. Compl. ¶ 25 (citing Danze's warranty, at http://www.danze.com/service/warranty). Danze also advertises that its faucets can be "depend[ed] on for many years to come," that they are "engineer[ed] … to meet exacting standards," and that they "will give you years of … trouble-free service." *Id.* ¶ 24. In combination, these statements are more than just sales talk or mere puffery; they are affirmations of fact to consumers: that their Danze faucet will be high-quality, free from defects,

and replaced free of charge if defective. Giving all reasonable inferences to Plaintiffs, these statements created an express warranty.

Danze separately argues that Plaintiffs' express warranty claims fail because none of the plaintiffs have alleged that they relied on any of Danze's representations when purchasing their faucets. Defs.'s Reply Br. at 8-10. While some states "require a plaintiff to show reliance on a statement or representation for it to be considered part of the basis of the bargain," *Bietsch v. Sergeant's Pet Care Prods., Inc.*, 2016 WL 1011512, at *5 (N.D. Ill. Mar. 15, 2016), in Washington, a buyer need only show that he *knew* of the representation at the time of purchase, *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 731 (Wash. 1992) ("Recovery for breach of an express warranty is contingent on a plaintiff's knowledge of the representation."); *Baughn v. Honda Motor Co., Ltd.*, 727 P.2d 655, 669 (Wash. 1986) (in an express warranty case, plaintiff "must at least be aware of such representations to recover for their breach"). There is language in the Complaint which suggests that the individual unit owners were aware of Danze's quality and replacement warranties at the time they purchased their units. Second Am. Compl. ¶ 25 ("This 'lifetime limited warranty' [referring to Danze's service warranty] leads reasonable consumers, including … the original unit purchasers at Duncan Place Condominium, to believe that Danze faucets are a premier product."); *id.* ¶ 41 ("Purchasers of Danze faucets make purchasing decisions based in part and in reliance upon the information presented by Defendants on their websites and in their marketing literature, advertisements,

and warranties."); *id.* ¶ 44 ("Had Defendants not withheld and omitted important information about the design, reliability, and performance of Danze faucets, Danze faucets would not have been installed in the Duncan Place Condominium … ."). But none of the allegations explicitly state this; they merely imply it, by suggesting that like other reasonable consumers, the individual condo owners knew about and "believe[d]" in these warranties when they purchased their condos. Whether these allegations really say that the unit owners knew about the warranty depends on how one reads them. For now, the Court interprets the allegations in the unit owners' favor, but if in fact Plaintiffs were *not* alleging that the individual condo owners did in fact know about these warranties at the time of purchase, then Plaintiffs must bring that to the Court's attention by filing a Position Statement by July 7, 2016. If the unit owners did not know about the warranty, then the unit owners' express-warranty claims will be dismissed.

Under Illinois law, whether a plaintiff must plead reliance is less clear. Some Illinois courts have suggested that a showing of reliance is required. *E.g.*, *Regopoulos v. Waukegan P'ship*, 608 N.E.2d 457, 461 (Ill. App. Ct. 1992); *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.*, 544 N.E.2d 1154, 1158 (Ill. App. Ct. 1989) ("[T]he buyer must show reliance on the seller's representations in order for an express warranty to exist."); *Bietsch*, 2016 WL 1011512, at *5 (applying Illinois law). Other Illinois courts have held that a plaintiff need not plead reliance, and that a seller's representations actually create a rebuttable presumption of reliance by the buyer. *E.g.*, *Felley v. Singleton*, 705 N.E.2d 930, 934 (Ill. App. Ct. 1999)

("[R]epresentations by the seller … are presumed to be affirmations of fact that become part of the basis of the bargain [and] constitute express warranties, regardless of the buyer's reliance on them, unless the seller shows by clear affirmative proof that the representations did not become part of the basis of the bargain."); *Weng v. Allison*, 678 N.E.2d 1254, 1256 (Ill. App. Ct. 1997). But even if reliance is required, the allegations in the Complaint could be read as showing that Donnelly did rely on the warranties when purchasing his Danze faucet. Second Am. Compl. ¶ 25 ("This 'lifetime limited warranty' leads reasonable consumers, including … Donnelly, … to believe that Danze faucets are a premier product."); *id.* ¶ 41 ("Purchasers of Danze faucets make purchasing decisions based … in reliance upon the information presented by the Defendants on their websites and in their marketing literature, advertisements, and warranties."); *id.* ¶ 44 ("Had Defendants not withheld and omitted important information about the … performance of Danze faucets, Danze faucets would not have been installed in … Donnelly's home[].."). But again, if the Court is not interpreting these allegations correctly, then Donnelly must file a Position Statement on this point by July 7, 2016. If he did not allege reliance, then the Court will decide the issue of whether a showing of reliance is required under Illinois law, and whether or not Donnelly's claim should be dismissed.

Finally, although neither party specifically raises this issue, the Court notes, as it did in its prior opinion, that it is still unclear whether Duncan Place may bring its own (as distinct from the assignments) express warranty claim. 09/15/15 Opinion

at 22. In Washington, "contractual privity between the buyer and seller must exist before a plaintiff may maintain an action for a breach of warranty." *Thongchoom v. Graco Children's Prods., Inc.*, 71 P.3d 214, 219 (Wash. App. Ct. 2003); *Baughn*, 727 P.2d at 669. "This requirement is relaxed if the manufacturer makes express representations in advertising, or in some other form, to the plaintiff." *Thongchoom*, 71 P.3d at 219; *Baughn*, 727 P.2d at 669. In this case, although it can be assumed that Danze made these representations to its consumers, who are in vertical privity with Danze and the ultimate end-users of Danze's faucets, it is not clear whether Danze also made these representations to non-consumers (like condo associations) who never actually purchase or use a Danze faucet. The allegations fail to specify in what way these representations were made to Duncan Place. Even if Duncan Place cannot show a direct contractual relationship with Danze, Duncan Place may still be able to bring a warranty claim if it can show that it was an "intended third party beneficiar[y] of the warranty." *Lidstrand v. Silvercrest Indus.*, 623 P.2d 710, 713 (Wash. App. Ct. 1981). But the allegations fail to show whether this is the case either. Unless Duncan Place can provide additional detail on its relationship with Danze, particularly whether it is in privity with Danze or, if not in privity, whether Duncan Place is an intended third party beneficiary, then Duncan Place's own claim must be dismissed. This additional detail again must be filed in a Position Statement by July 7, 2016.

### ii. Breach of Implied Warranty of Merchantability Claim

In Count 2, Donnelly raises a claim for breach of the implied warranty of merchantability.[4] In Illinois, that claim is governed by Section 2-314 of the Uniform Commercial Code. *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807 N.E.2d 1165, 1168 (Ill. App. Ct. 2004); 810 ILCS 5/2-314. "To succeed on a claim of breach of implied warranty of merchantability, a plaintiff must allege and prove: (1) a sale of goods (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Bos. Scientific Corp.*, 792 N.E.2d 296, 299 (Ill. 2003). "Unless excluded or modified, this warranty is implied in every sale [of goods]." *Id.*; 810 ILCS 5/2-314(1). If a plaintiff seeks to recover purely economic damages, then the plaintiff must also show that he is in vertical privity with the seller. *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099 (Ill. App. Ct. 2007); *Mekertichian*, 807 N.E.2d at 1168.

Danze challenges Donnelly's claim on two grounds: that Donnelly failed to properly allege that Danze is a merchant, and that Donnelly is not in vertical privity with Danze. Defs.'s Br. at 16-17. The Court addresses each argument in turn. An implied warranty of merchantability applies only to a merchant of goods. *Brandt*, 792 N.E.2d at 299. The U.C.C. generally defines a "merchant" as:

> [A] person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

---

[4]The Complaint does not specify which Plaintiffs are raising this claim. Second Am. Compl. ¶¶ 79-89. But the Court previously dismissed the claim against Duncan Place, *see* 09/15/15 Opinion at 19-21, and the parties' briefing addresses this claim only with respect to Donnelly. Defs.'s Br. at 14-17; Pls.'s Resp. Br. at 15-16. Accordingly, the Court likewise treats this claim as being brought only by Donnelly.

810 ILCS 5/2-104(1); *Brandt*, 792 N.E.2d at 299-300. But Section 2-314 of the U.C.C.—the section that describes the implied warranty of merchantability—relies on a slightly narrower definition of merchant. Section 2-314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). U.C.C. comments clarify that to qualify as a merchant under Section 2-314, a person must also have "professional status" as to a particular kind of goods, and not just be "engaged in business." 810 ILCS 5/2-104 cmt. 2; *Brandt*, 792 N.E.2d at 300; *Siemen v. Alden*, 341 N.E.2d 713, 715 (Ill. App. Ct. 1975).

Here, Donnelly alleges that Danze is a merchant. To be sure, Donnelly does not explicitly use the term "merchant" in the Complaint, but the allegations are enough to put Danze within the definition. The Complaint alleges that "[Danze, Inc.'s parent company] oversee[s] the work of Danze, actively market[s] and promote[s] the Danze brand—consisting of faucets, bath accessories, and showerheads—and, on information and belief, designed, engineered, manufactured, and purposefully caused the Danze faucets to be placed into the stream of commerce[.]" Second Am. Compl. ¶ 13. It also alleges that "the Danze brand is Globe Union's primary brand in the North American market—a market accounting for 53% of Globe Union's total sales in 2013," *id.* ¶ 20, and that "Danze products are sold across the United States through hundreds of registered showrooms, retailers, and wholesalers," *id.* ¶ 21. The Complaint further alleges that "Defendants designed, developed, tested, manufactured, distributed, marketed, and sold Danze

faucets for purposes of their eventual sale to end users and installation in homes, offices, buildings, and other structures." *Id.* ¶ 80. These allegations show that Danze is in the business of professionally selling faucets and bathroom accessories. In other words, Danze is a merchant. *E.g.*, *Burrus v. Itek Corp.*, 360 N.E.2d 1168, 1170 (Ill. App. Ct. 1977) ("It is obvious that the defendant is a merchant since its business is to sell printing presses."). *Cf. Siemen*, 341 N.E.2d at 715 (sawmill operator was not a merchant of sawmill equipment where sale of second-hand sawmill to buyer was seller's only sale of sawmill equipment).

Danze next contends that Donnelly has failed to establish that he is in privity with Danze. Defs.'s Br. at 16-17. In Illinois, the plaintiff must be in vertical privity with the seller to assert a claim for economic damages based on a breach of an implied warranty. *Mekertichian*, 807 N.E.2d at 1168; *Jensen*, 862 N.E.2d at 1099. *See also Bd. of Educ. of City of Chi. v. A, C and S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989) ("[U]nder the contract principles of the Uniform Commercial Code, in order to state a claim against the defendant for breach of implied warranty, privity must exist between the plaintiff and defendant."). A buyer of goods is considered to be in vertical privity with his immediate seller, and thus, has a potential cause of action—at least when trying to recover economic damages—only against his immediate seller. *Mekertichian*, 807 N.E.2d at 1168; *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988). In Donnelly's case, this means that to the extent Donnelly is attempting to recover economic loss, he only has a cause of action

for breach of implied warranty against the seller from which he purchased his Danze faucet: Home Depot. Second Am. Compl. ¶ 51.

But Donnelly contends that he is not bound by this privity requirement because he alleges more than just economic loss; he also alleges property damage to his kitchen cabinetry that surrounded the defective faucet. Pls.'s Resp. Br. at 16-17; Second Am. Compl. ¶ 51 ("Within weeks of installation, the steel-braided hosing in … Donnelly's faucet began leaking, causing water damage to the surrounding cabinetry."). Illinois does seem to relax the vertical privity requirement in cases where a plaintiff is seeking to recover *non*-economic loss, such as property damage or personal injury. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982) (defining "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property"). In *Szajna v. General Motors Corporation*, the Illinois Supreme Court extensively discussed the privity requirement in implied warranty cases. 503 N.E.2d 760 (Ill. 1986). There, the plaintiff purchased a car from a third-party dealership and sought to bring a breach of implied warranty claim against the car manufacturer, not the dealership where he purchased the car. *Id.* at 761. The plaintiff sought only economic damages. *Id.* Recognizing that he was not in vertical privity with the manufacturer, the plaintiff urged the court to abolish the privity requirement in implied warranty cases involving purely economic loss. *Id.* at 762. The Illinois Supreme Court refused to do so, stating that "[t]he line of demarcation between nonprivity and privity" will

34

remain "between [claims seeking to recover] economic loss and [those seeking to recover] noneconomic loss." *Id.* at 767. So, *Szajna* does at least suggest that privity is not required where a plaintiff seeks to recover non-economic loss.

But subsequent Illinois case law explains that the privity requirement is relaxed only when the non-economic loss alleged is physical harm to a person, that is, loss is for *physical personal injuries*. In *Board of Education of City of Chicago v. A, C and S, Inc.*, the Illinois Supreme Court again addressed Illinois's privity requirement for breach of implied warranty claims. 546 N.E.2d at 595. The plaintiffs in that case, thirty-four school districts, sought to recover the costs of removing and repairing asbestos-containing material from their buildings through (among other things) a breach of implied warranty claim. *Id.* at 583. When discussing the plaintiffs' implied warranty claim, and in particular, Illinois's privity requirement, the Illinois Supreme Court reiterated that "Illinois [does] recognize[] an exception to the privity doctrine whenever *physical* harm is alleged." *Id.* (emphasis added). Citing to *Szajna*, the court explained that "[p]rivity is not required when a buyer who has sustained *personal injury* predicates recovery against a remote manufacturer on a theory of implied warranty." *Id.* (emphasis added). But the court then went on to state that this exception does *not* extend to allegations of property damage: "[T]hese complaints[,] [however,] allege that there has been property damage, … we will not extend the personal injury exception in this contract action to allegations of property damage." *Id.* Consequently, the court held that the plaintiffs could "only state a cause of action [for breach of implied

warranty] against the defendants with whom they c[ould] establish privity of contract." *Id.* at 596. *See also Berry v. G.D. Searle & Co.*, 309 N.E.2d 550, 556 (Ill. 1974) (allowing personal injury cases to be maintained as breach of implied warranty actions where there was no privity between the plaintiff and the remote manufacturer defendant); *Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*, 2009 WL 3147315, at *2 (N.D. Ill. Sept. 28, 2009) (applying Illinois law and holding that plaintiff still needed to be in privity with defendant to sue for breach of implied warranty even though plaintiff was seeking to recover for property damage).

Here, Donnelly seeks to recover both non-economic loss (property damage to his cabinetry) and economic loss (the cost to replace the faucet). Second Am. Compl. ¶ 51 ("Within weeks of installation, the steel-braided hosing in Plaintiff Donnelly's faucet began leaking, causing water damage to the surrounding cabinetry."); *id.* ¶ 52 ("Plaintiff Donnelly sent a letter to Danze informing it of the problems with his faucet and the property damage he had sustained and requesting reimbursement for the damages he suffered due to the defective faucet."); *id.* ¶ 53 ("Plaintiffs … have suffered damages as a result of Defendants' deceptive practices, including …that the faucets are defective and require replacement[.]"). But property damage is the only non-economic loss Donnelly alleges he suffered; he does not allege that he suffered any physical harm from the defective faucet. Second Am. Compl. ¶¶ 51-53. So, like the plaintiffs in *A, C and S, Inc.*, Donnelly remains constrained by the vertical privity requirement. He may only bring a cause of action for breach of implied warranty against those with whom he is in privity, which in

36

Illinois means the immediate seller of the faucet. This is fatal to Donnelly's claim, because Donnelly explicitly alleges that he purchased the faucet from Home Depot, not from Danze. *Id.* ¶ 51. Because Donnelly cannot show that he is in vertical privity with Danze, his implied warranty claim is dismissed.[5]

### iii. Negligence and Strict Products Liability Claims

In Counts 3 and 4, all Plaintiffs (Duncan Place, the individual unit owners, and Donnelly) assert negligence and strict-products liability claims. Second Am. Compl. ¶¶ 90-104. Although not entirely clear from Danze's briefing, it appears that Danze first asserts that these tort claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Defs.'s Br. at 11-12, 20. But neither Plaintiffs' negligence claims, nor their strict-products liability claims are premised on fraud. Plaintiffs' negligence claims allege that Danze "owed a duty to

---

[5]Illinois recognizes three other exceptions to its privity requirement. First, like the U.C.C. provision concerning implied warranties, Illinois allows a person in the household of the buyer to bring an implied warranty claim in certain instances. 810 ILCS 5/2-318; *Allstate Ins. Co.*, 2009 WL 3147315, at *2. Second, Illinois relaxes the privity requirement when a consumer sues the manufacturer under the Magnuson-Moss Act, 15 U.S.C. § 2308, and shows that the manufacturer has issued a written warranty on the product. *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1064 (Ill. 2007); *Szajna*, 503 N.E.2d at 769. Notably, several federal courts have rejected this exception, along with Illinois's interpretation of the Magnuson-Moss Act. *See e.g.*, *Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 945-46 (N.D. Ill. 2004); *Kutzler v. Thor Indus., Inc.*, 2003 WL 21654260, at *6 (N.D. Ill. July 14, 2003); *Soldinger v. Aston Martin LaGonda of N.A., Inc.*, 1999 WL 756174, at *6–10 (N.D. Ill. Sept. 13, 1999); *see also Voelker v. Porsche Cars N.A., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). Finally, Illinois relaxes the privity requirement when a remote manufacturer knows "the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, 2005 WL 782698, at *12-13 (N.D. Ill. Apr. 6, 2005) (quoting *Frank's Maintenance & Eng'g, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403, 412 (Ill. App. Ct. 1980)); *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 25 (Ill. App. Ct. 1982). None of these other exceptions apply in this case. Donnelly is the buyer; he is not suing under the Magnuson-Moss Act; and Donnelly does not allege that he had Danze manufacture the faucet to meet his specific needs.

Plaintiffs and the members of the Class … not to put defective products such as Danze faucets on the market," and "to exercise reasonable care in the design, manufacture, quality control, and marketing of Danze faucets, and to disclose to the consuming public the foreseeable risks associated with the use of their defective products." Second Am. Compl. ¶ 91. According to Plaintiffs, Danze "breached this duty by designing, manufacturing, selling, advertising, and warranting a defective product," which in turn "proximate[ly] cause[d]" Plaintiffs to "suffer damages and losses." *Id.* ¶¶ 92, 95. These claims do not appear to be premised on Danze making fraudulent statements, but rather on Danze making a defective product and failing to inform consumers of the risks associated with using its product. Assuming that to be the case, Plaintiffs' negligence claims are not subject to Rule 9(b)'s heightened pleading standard.

Plaintiffs premise their strict-products liability claims on similar allegations. Plaintiffs allege that Danze's "faucets were and are defectively designed and/or manufactured," and are "unfit for their intended use." Second Am. Compl. ¶ 99. Plaintiffs also allege that "[t]he faucets fail to perform in accordance with the reasonable expectations of Plaintiffs and the Class," and that Danze "had a duty not to put a defective product[] on the market," and "to disclose to the consuming public the foreseeable risks associated with the use of Danze faucets." *Id.* ¶ 101. Plaintiffs contend that Danze "breached this duty by failing to disclose the defects that they knew were associated with the Danze faucets, and by allowing the sale and use of the faucets when [Danze] knew they would not perform as intended." *Id.* ¶ 102.

According to Plaintiffs, "[t]he defective faucets caused … property damage," and required Plaintiffs to incur the "costs associated with the repair and/or replacement of the defective faucets." *Id.* ¶ 103. Again, these allegations appear to be premised on Danze manufacturing a faulty faucet and on Danze failing to inform consumers of the defect, not on Danze acting fraudulently. These claims are not subject to Rule 9(b)'s heightened pleading standard either.

Next, Danze contends that the economic loss doctrine bars Donnelly's and the unit owners' negligence and strict-products liability claims. The Court turns to Donnelly's claims first. Because "[t]he policy considerations against allowing recovery for solely economic loss in strict liability cases apply to negligence actions as well," the Court deals with these claims together. *Moorman Mfg. Co.*, 435 N.E.2d at 451; *A, C and S, Inc.*, 546 N.E.2d at 585. Illinois law defines "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Moorman Mfg. Co.*, 435 N.E.2d at 449. In Illinois, economic loss is not recoverable under the tort theories of strict liability or negligence. *Id.* at 451-43; *In re Chi. Flood Litig.*, 680 N.E.2d 265, 274-75 (Ill. 1997). The rationale is that "[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery." *Moorman Mfg. Co.*, 435 N.E.2d at 451; *see also Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986); *Am. United*

*Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 926 (7th Cir. 2003) ("Contract law provides the proper remedy for disappointed commercial expectations, such as when a product is unfit for its intended use.").

Here, Donnelly seeks to recover the cost of replacing his damaged Danze faucet, as well as the cost to repair the damage to his cabinetry caused by the leak. Second Am. Compl. ¶¶ 51-53. Donnelly contends that because he seeks to recover what he considers to be non-economic loss (property damage to his cabinetry) as well as economic loss (cost to repair and/or replace faucet), his tort claims are not barred by the economic loss doctrine. Pls.'s Resp. Br. at 18-19. But the distinction between economic and non-economic loss is not quite so clear cut. The type of damage alleged is only one consideration in the analysis; additional considerations include "the nature of the defect and the manner in which the damage occurred." *Moorman Mfg. Co.*, 435 N.E.2d at 449 ("The demarcation between physical harm or property damage on the one hand and economic loss on the other generally depends on the nature of the defect and the manner in which the damage occurred."). Loss caused by "qualitative defects," for example, generally "fall[] under the ambit of a purchaser's disappointed expectations [and] cannot be recovered under" strict liability or negligence. *Id.* at 450; *Sundstrand Corp. v. Lake Shore, Inc.*, 840 F. Supp. 588, 589-90 (N.D. Ill. 1994). Such loss, which includes "loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause," is better recovered through contract law. *See Moorman Mfg. Co.*, 435 N.E.2d at 448, 450 ("[C]ontract law, which protects expectation interests,

provides the proper standard when a qualitative defect is involved, i.e., when a product is unfit for its intended use."). Loss to person or property resulting from a sudden or dangerous occurrence, however, is more appropriately suited to tort law and generally may be recovered under the theories of strict liability and negligence. *Id.*, *In re Chi. Flood Litig.*, 680 N.E.2d at 275. Indeed, "the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." *Moorman Mfg. Co.*, 435 N.E.2d at 448.

Thus, in order to properly determine whether Donnelly's claims are barred by the economic loss doctrine, the Court must look beyond the damages alleged in the Complaint and consider the nature of the defect (a defective faucet) and the manner in which the damages arose (through a leak). In particular, the Court must consider whether Donnelly's loss was caused by a product that simply failed to meet his needs, or whether it was caused by a sudden and dangerous occurrence that properly sounds in tort. *In re Chi. Flood Litig.*, 680 N.E.2d at 275. As can be gleaned from the discussion above, the mere fact that Donnelly alleges he suffered some property damage does not—on its own—allow him to get around the economic loss doctrine; in Illinois, "the economic loss rule [still] applies … to plaintiffs who have incurred physical damage to their property if the damage is caused by disappointed commercial expectations, gradual deterioration, internal breakage, or other nonaccidental causes, rather than a dangerous event." *Id.*

In this case, a review of Donnelly's allegations show that his claims are better suited to contract law than tort law. Donnelly does not allege that his damages resulted from a sudden and dangerous occurrence; he states only that "[w]ithin weeks of installation, the steel-braided hosing in [his] faucet began leaking, causing water damage[.]" Second Am. Compl. ¶ 51. The allegations in the Complaint also center around how Danze's faucets are unfit for their intended use. *Id.* ¶ 53 ("Plaintiffs and members of the Class have suffered damages as a result of Defendants' deceptive practices, including the fact that the faucets are defective and require replacement ... earlier than could have reasonably been expected[.]"); *id.* ¶ 93 ("Defendants were aware, or reasonably should have been aware, that the faucets were defective and did not perform their intended use."); *id.* ¶ 99 ("Defendants' faucets were and are defectively designed and/or manufactured, and were and are unfit for their intended use."); *id.* ¶ 100 ("The faucets fail to perform in accordance with the reasonable expectations of Plaintiffs and the Class, and the benefits of the design of the faucets do not outweigh the risk of their failure."). Allegations of this nature generally relate to a consumer's expectations, and better align with contract law than tort law. *Moorman Mfg. Co.*, 435 N.E.2d at 451; *Am. United Logistics, Inc.*, 319 F.3d at 926 ("Contract law provides the proper remedy for disappointed commercial expectations, such as when a product is unfit for its intended use.").

Unfortunately for Donnelly, given the nature of the defect and the manner in which his damages arose, the damage to his kitchen cabinetry appears to have been

nothing more than incidental loss flowing from the failure of the faucet itself; this loss is not recoverable in tort. *Wash. Courte Condo. Association-Four v. Washington-Golf Corp.*, 501 N.E.2d 1290, 1293-94 (Ill. App. Ct. 1986) (concluding that no tort action lied where improperly installed plumbing fixtures resulted in damage to insulation, walls, ceiling, floors and electrical outlets, because all of the damage was merely consequential economic loss). As the Illinois Supreme Court has explained: the economic loss doctrine is designed to "bar tort recovery when a defective product causes the type of damage one would reasonably expect as a direct consequence of the failure of a defective product." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 58 (Ill. 1997). In this case, it is reasonable for one to expect that a defective kitchen faucet could cause damage to the product itself and to any surrounding kitchen cabinetry. Accordingly, the fact that Donnelly alleges the faucet caused some damage to his cabinetry does not prevent his claim from being barred by the economic loss doctrine.[6] Donnelly's negligence and strict-products liability claims are dismissed.

---

[6]Illinois does recognize three exceptions to the economic loss rule: "(1) where the plaintiff sustained personal damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence … ; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, i.e., fraud … ; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions[.]" *In re Chi. Flood Litig.*, 680 N.E.2d at 275 (emphasis in original omitted); *see also In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 443-44 (Ill. 1994); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011). None of these exceptions apply here, however. Donnelly argues only that the first exception applies to his claims: that his damage was the result of a sudden and dangerous occurrence. Pls.'s Resp. Br. at 18. But, as discussed above, Donnelly's claims do not meet this exception.

In a similar vein, Danze argues that the unit owners' negligence and strict-products liability tort claims are barred by the economic loss doctrine.[7] The unit owners' tort claims are governed by Washington law. In the prior opinion, the Court allowed Duncan Place's similar tort claims to survive, though barely, because there was an allegation of damage beyond damage to the product itself. 09/15/15 Opinion at 25-26. But in examining this issue for the individual unit owners' claims, the Court has reconsidered the outcome as to Duncan Place as well. In Washington, the question of whether the economic loss rule bars a plaintiff from recovering in tort is resolved by looking to "ordinary tort principles." *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010). "An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Id.* Whether an independent tort duty exists "'is a question of law [that] depends on mixed considerations of logic, common sense, justice, policy, and precedent.'" *Id.* (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1164 (Wash. 2001)). In the prior opinion, the Court focused on whether there was any damage beyond the product itself, but really there is no bright-line rule. In determining whether an independent tort duty exists, courts may consider "interrelated factors such as [1] the nature of the defect, [2] the type of risk, and [3] the manner in which the injury arose." *Id.* at 1265; *see also Stuart v. Coldwell Banker Commercial Grp., Inc.*, 745 P.2d 1284, 1291 (Wash. 1987). "When a product defect results in a personal injury or damage to other property, the cause can plainly be a breach of the tort duty."

---

[7]The Court again addresses both tort claims together. The parties do not distinguish between the two torts in briefing this issue. Pls.'s Resp. Br. at 17; Defs.'s Br. at 17-18.

*Eastwood*, 241 P.3d at 1265. But, "[w]hen a product defect results in injury only to the product itself, … the risk of harm must be carefully analyzed" to determine whether it sounds in tort or contract. *Id.*

In this case, Duncan Place and the independent unit owners have failed to adequately allege the existence of an independent tort duty. Perhaps Duncan Place and some of the unit owners suffered property damage (though the Complaint does not specify which owners did), but even assuming that happened, the manner in which the damage arose and the type of risk presented by a leaky faucet are, as explained in discussing Donnelly's claim, the type of damage and risk posed by a product that does not meet contractual expectations. The faucets did not expose the unit owners to an unreasonable risk of harm that implicates the safety interests of tort law. *Eastwood*, 241 P.3d at 1265. The negligence and strict-products liability claims are dismissed.

Finally, if Duncan Place's negligence and strict-products liability claims had survived, then the Court would not have dismissed, at least at this stage, the claims as time-barred. Defs.'s Br. at 19-20. In Washington, the statute of limitations for negligent injury to real property is two years. *Wallis v. Lewis Cnty.*, 137 P.3d 101, 107 (Wash. App. Ct. 2006); Wash. Rev. Code § 4.16.130. The statute of limitations for a products-liability claim is three years. *Holbrook, Inc. v. Link-Belt Const. Equip. Co.*, 12 P.3d 638, 645 (Wash. App. Ct. 2000); Wash Rev. Code § 7.72.060(3). Danze asserts that Duncan Place "ha[s] consistently pled that the faucets were installed in the condominium units in 2009," and that they "fail[ed] in a minimal period of time

following installation." Defs.'s Br. at 20. According to Danze, these allegations show that Duncan Place's negligence and strict-products liability claims are "likely barred by the applicable statutes of limitations." *Id.*

But whether Duncan Place's tort claims are in fact time-barred cannot be determined at this stage. Under Washington's discovery rule, "a cause of action does not accrue until a party knew or should have known the essential elements of the cause of action." *Green*, 960 P.2d at 915; *Gevaart v. Metco Constr., Inc.*, 760 P.2d 348, 350 (Wash. 1988). And "[w]hether a plaintiff should have discovered the elements of a cause of action to begin running the statute of limitation is ordinarily an issue of fact." *Niven v. E.J. Bartells Co.*, 983 P.2d 1193, 1197 (Wash. App. Ct. 1999). The burden is on the defendant "claiming [that] the action is time-barred" to "show[] the absence of an issue of material fact." *Id.*; *Green*, 960 P.2d at 918. Danze has failed to make this showing.

Duncan Place does allege that "Danze faucets were installed in all 63 units when the Condominium was built in 2009." Second Am. Compl. ¶ 6. But the Complaint does not provide any detail regarding when the leaks occurred, or what the resulting damage was from each leak. Even assuming that the faucets failed reasonably quickly after installation, as Danze contends, it is still not clear from the face of the Complaint when Duncan Place "should have discovered salient facts regarding [its] claim[s]." *Green*, 960 P.2d at 915. "The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to

ascertain the scope of the actual harm." *Id.* at 916; *Hawkes v. Hoffman*, 105 P. 156, 158 (Wash. 1909) ("[O]ne who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose."). But here, it cannot be ascertained from the Complaint (or even from the extrinsic evidence, for that matter) when Duncan Place was placed on notice, that is, when it should have discovered the problem with the faucets and been aware of the possibility of bringing tort claims. For example, was Duncan Place put on notice of these claims as soon as the first leak occurred? Or would that not have occurred until after the second or third leak, when the first leak could no longer be viewed as coincidental or an isolated failure? Dismissal of Duncan Place's negligence and strict-products liability claims on limitations grounds would not have been appropriate at this stage of the litigation. But, as discussed above, the claims are dismissed for failure to state a claim in the first instance.

### iv. Unjust Enrichment Claim

In Count 5, Duncan Place, the individual condo owners, and Donnelly all assert an unjust enrichment claim. Second Am. Compl. ¶¶ 105-09. Danze again argues that each Plaintiff's unjust enrichment claim is subject to Rule 9(b)'s heightened pleading requirements. Defs.'s Br. at 11-12, 21; Fed. R. Civ. P. 9(b). The Court agrees. This claim is premised on fraud and on the fact that Danze wrongfully "profited and benefited" from Plaintiffs' purchase of Danze faucets. Second Am. Compl. ¶ 106. According to the Complaint, Danze "retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants'

47

misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants." *Id.* ¶ 107. By keeping these profits, Plaintiffs argue, Danze has been unjustly enriched "by [its] fraudulent and deceptive withholding of benefits to Plaintiffs and the Class." *Id.* ¶ 108. Because this claim, unlike Plaintiffs' negligence and strict-products liability claims, is actually premised on fraud, it must be pled with particularity.

Plaintiffs point out that at least one court has found Rule 9(b)'s heightened pleading standard inapplicable to an unjust enrichment claim, even though certain aspects of the claim alleged deception or material omissions. Pls.'s Resp. Br. at 21 (citing *Vernon v. Quest Comm'ns Int'l Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009)). But this does little to help Plaintiffs here. Whether Rule 9(b) applies to a given case "depend[s] on the ... factual allegations" contained in the complaint of that case. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). So, the fact that the court in *Vernon* did not find any "averments of fraud" in the plaintiff's unjust enrichment claim there, does not mean that the same is true here. In this case, Plaintiffs' claims do rely on fraud. They rest on the premise that Danze intentionally deceived Plaintiffs by fraudulently representing that Danze's faucets were of high-quality and reliable, so that Plaintiffs would purchase the faucets and so that Danze could profit. Because Plaintiffs' unjust enrichment claims rely on a theory of fraud—that Danze intentionally marketed its faucets fraudulently so as to increase its profits—they must comply with Rule 9(b). *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 912-13 (7th Cir. 1990) (applying Rule 9(b) to alleged violations of the

Indiana Deceptive Practices Act, breach of fiduciary duty, and negligence because "the facts alleged in support of both counts would constitute fraud [ ] if proven"); *Zurich Capital Markets, Inc. v. Coglianese*, 2005 WL 1950653, at *10 n.12 (N.D. Ill. Aug. 12, 2005) ("[T]o the extent [that plaintiff's] unjust enrichment claims rely on theories of fraud, its averments of fraud must comply with Rule 9(b).").

Rule 9(b) requires a plaintiff to allege with "particularity" the "circumstances constituting fraud." Those circumstances include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). In other words, it requires a plaintiff to plead "the who, what, when, where and how[.]" *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). It is here that Plaintiffs' claims fatally falter.

In the paragraphs that directly support Plaintiffs' unjust enrichment claims, Plaintiffs include only very broad allegations. Plaintiffs allege that Danze "profited and benefited" from its "conscious wrongdoing," Second Am. Compl. ¶ 106, that Danze "voluntarily accepted" profits from consumer faucet purchases despite "know[ing]" that its "misconduct" led consumers to believe they were receiving better faucets than they were, *id.* ¶ 107, and that Danze has been "unjustly enriched by [its] fraudulent and deceptive withholding of [these profits]," *id.* ¶ 108.

These allegations lack any sort of particularity and do not meet Rule 9(b)'s standard.

It is true that, earlier in the Complaint, Plaintiffs do include some additional allegations that provide greater detail on these misrepresentations. For example, Plaintiffs allege that Danze misrepresented that its faucets are "safe, reliable, and worry-free;" that they are "design[ed] and engineer[ed] … to meet exacting standards," and that they will be "free from defects in material and workmanship[.]"Second Am. Compl. ¶¶ 23-25, 35. Plaintiffs allege that Danze's "representations are false and misleading because: (1) Defendants know that Danze faucets are defective, will fail in a fraction of the time represented, and are not fit for their intended purpose; and (2) Defendants consistently fail to honor their warranty obligations." *Id.* ¶ 37. Plaintiffs further allege that Danze included these statements on its "websites and in [its] marketing literature, advertisements, and warranties." *Id.* ¶¶ 23-27, 38, 40-41. But even these allegations fail to specify *who* authorized these representations to be made, *when* the unspecified executives decided to make those representations, and *what* facts suggest that the representations were a product of fraud, as distinct from ordinary contractual failures. These allegations also fail to overcome Rule 9(b)'s heighted pleading requirement. Accordingly, Danze's motion to dismiss the unjust enrichment claims is granted against all Plaintiffs.[8]

---

[8]Danze argues that Donnelly cannot bring this claim because his warranty claim is still pending, and in turn, cannot show the absence of a remedy at law—a required element to state a claim under Illinois law, *see Sherman v. Ryan*, 911 N.E.2d 378, 399 (Ill. App. Ct. 2009). Defs.'s Br. at 22. But as explained in the prior opinion, at the pleadings stage there is

### v. Illinois Consumer Fraud and Deceptive Business Practices Act Claim

Finally, in Count 6, Donnelly, individually and on behalf of the Illinois subclass (if it ever gets certified), alleges that Danze violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.* Second Am. Compl. ¶¶ 110-15. "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). It prohibits, in pertinent part:

> the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, … [regardless of] whether any person has in fact been misled, deceived, or damaged thereby.

815 ILCS 505/2.

To state a claim under the Act, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson*, 775 N.E.2d at 960; *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014); *Siegel v. Shell Oil Co.*, 612

---

no barrier to a plaintiff pleading several causes of action, arising under law and equity, as alternative avenues of recovery, even if one of the avenues will preclude recovery under another if successful. 09/15/15 Opinion at 28. This would not have been a basis for dismissal.

Danze also argues, as it did with Duncan Place's negligence and strict-liability claims, that Duncan Place's and the unit owners' unjust enrichment claims are time-barred under Washington law. Defs.'s Br. at 21. But as the Court previously discussed, such a determination cannot be made at the dismissal-motion stage; discovery would have been needed if the unjust-enrichment claim survived.

F.3d 932, 934 (7th Cir. 2010). A plaintiff must also allege that he or she suffered actual damage that was proximately caused by the deceptive act. *Phila. Indem. Ins. Co.*, 771 F.3d at 402; *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005).

Recovery may also be had under the Act for conduct that is unfair. *Robinson*, 775 N.E.2d at 960. When determining whether an act or course of conduct is unfair, factors to consider are: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id.* at 961 (citing *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). If a claim under the Act asserts fraud, then it must be pled with particularity. *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010); Fed. R. Civ. P. 9(b). But if it alleges only unfair conduct, then it is subject to the pleading standards of Rule 8. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).

Donnelly alleges that Danze engaged in both deceptive and unfair conduct. Second Am. Compl. ¶ 113 ("Defendants' deceptive or unfair practices took place in the course of trade and commerce."); *id.* ¶ 114 ("Defendants' intended for Plaintiff Donnelly and the Class to rely on these deceptive and unfair practices when Plaintiff Donnelly and the Class purchased their Danze faucets."). *See also* Pls.'s Resp. Br. at 23 ("Donnelly's claim under the ICFA is two fold: it alleges both an unfair practice and a deception claim."). Donnelly's unfairness claim is premised on

Danze's "sale and marketing of [d]efective Danze faucets in a manner that causes 'substantial injury to consumers.'" *Id.* at 24; Second Am. Compl. ¶ 4 ("Defendants continue to sell these faucets to the public, and … to make false representations and warranties, despite the fact that the faucets consistently fail, are defective, cause property damage, and cost consumers substantial removal and replacement costs."); *id.* ¶ 115 ("Plaintiff Donnelly and the Class have suffered injuries in fact and actual damages, including financial losses resulting from overpayment for Danze faucets due to Defendants' violations of the [ICFA.]"). Because this claim does not rely on a theory of fraud, but rather rests on the theory that Danze's actions were unfair in that they injured consumers, it is not subject to the heightened pleading standard of Rule 9(b). As alleged, Donnelly has provided sufficient factual support for this unfairness claim to survive dismissal.

Donnelly's claim that Danze engaged in deceptive conduct, however, is subject to Rule 9(b)'s heightened pleading requirement. This claim is premised on fraud: that Danze deceived consumers into purchasing faucets by misrepresenting "that the[] [faucets] … are of a particular quality or grade [when] they are not." Second Am. Compl. ¶ 112. To survive dismissal, Donnelly's claim must be pled with "particularity and specificity." *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005). That is, the Complaint must allege the "what, where and when of the fraud." *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins.*, 412 F.3d 745, 749 (7th Cir. 2005). The Complaint fails to do this. As explained in dismissing the unjust enrichment claim, the Complaint does not specify *who*

authorized the allegedly false representations to be made, *when* the unspecified persons who decided to make those representations made those decisions, and *what* factual allegations (as distinct from conclusions) suggest that the representations were a product of intentional fraud, as distinct from ordinary contractual failures. The deceptive practices aspect of the ICFA claim is dismissed.

## IV. Conclusion

For the reasons discussed above, Danze's motion to dismiss [R. 61] Plaintiffs' Second Amended Complaint is granted in part and denied in part. Danze's Rule 12(b)(1) motion is denied in its entirety: Duncan Place has standing to assert the assigning unit owners' claims; the unit owners have alleged an injury-in-fact; and Donnelly's claims are ripe. With regard to Danze's Rule 12(b)(6) arguments: the claims for breach of express warranty survive (subject to the potential filing of the Position Statement); Donnelly's claim for breach of implied warranty of merchantability is dismissed for lack of privity; the negligence and strict-products liability claims are dismissed as to all Plaintiffs; the unjust enrichment claim is dismissed; and Donnelly's ICFA claim survives as to the unfair-practice claim, but not the deceptive-practice claim.

At the next status hearing, the Court will set the answer deadline, which the defense should start working on, as well as the remainder of the discovery schedule (including on class certification). The Court encourages the parties to begin

settlement negotiations as well, in order to avoid the extensive delay and significant cost, and litigation risk for both sides, that continued litigation will impose.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: June 30, 2016