# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DUNCAN PLACE OWNERS ASSOCIATION**,** on its own behalf and as Assignee of Association members, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | ) No. 15-cv-1662 |
| v. | )<br>)<br>) Judge Edmond E. Chang |
| DANZE, INC., f/k/a GLOBE UNION AMERICAN CORP., GLOBE UNION GROUP, INC., AND GLOBE UNION INDUSTRIAL CORP., | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Duncan Place Owners Association (for convenience's sake, call it Duncan Place) is a condominium association in the State of Washington. The association and its individual condo owners contend that faucets sold by Danze, Inc. have failed, causing property damage throughout Duncan Place condos.[1] R. 60, Second Am. Compl. ¶ 46; R. 90, Pl.'s Resp. Br. at 3.[2] According to Duncan Place, Danze has failed to repair or replace the faucets as promised in its written warranty. Second Am. Compl. ¶ 47. Danze previously moved to dismiss Plaintiffs' second amended complaint, R. 61, Def.'s Mot. Dismiss, which was granted in part and denied in part. R. 74, 6/30/2016 Opinion and Order at 54. Only one claim remains: Duncan Place's

---

[1]This Court has subject matter jurisdiction over the case under § 1332(a)(2)(A), as the amount in controversy exceeds $75,000 and the parties are of diverse citizenship.

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

claim for breach of express warranty against Danze. Now, Danze moves for summary judgment on the breach of express warranty claim, claiming that Duncan Place cannot show it is in privity with Danze or is a third-party beneficiary to the faucet's express warranty. R. 89, Def.'s Mot. Summ. J. ¶ 3. The Court agrees and grants summary judgment.

## I. Background

In deciding Danze's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In April 2015, Duncan Place and then-Plaintiff Phyllis Zisser filed a Class Action complaint regarding the Danze faucets. R. 21, First Am. Compl.; R. 89-2, Def.'s Statement of Facts (DSOF) ¶ 1; R. 90-1, Pl.'s Resp. to DSOF ¶ 1. Danze's first motion to dismiss followed, and this Court dismissed Duncan Place's breach of implied warranty claims as untimely. R. 56, 9/15/2015 Opinion and Order at 20-21.

Plaintiffs' Second Amended Complaint came in September 2015, which still named Duncan Place and Zisser as plaintiffs, but also included 41 individually identified condominium owners, as well as an additional singular plaintiff, Daniel Donnelly. Second Am. Compl. ¶¶ 6-9; DSOF ¶ 4; Pl.'s Resp. to DSOF ¶ 4. Along with class-action allegations, the Second Amended Complaint alleged six different claims for relief, including breach of express warranty, breach of warranty of merchantability, negligence, strict products liability, unjust enrichment, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

2

DSOF ¶ 5; Pl.'s Resp. to DSOF ¶ 5; Second Am. Compl. ¶¶ 54, 71, 80, 91, 97-99, 106, 114. Zisser was dismissed with prejudice, having accepted an Offer of Judgment under Fed. R. Civ. P. 68. R. 70, Stip. of Dismissal; R. 71, 3/29/16 Minute Entry; DSOF ¶ 8; Pl.'s Resp. to DSOF ¶ 8. Then, Danze again moved to dismiss the complaint on various grounds. Def.'s Mot. Dismiss; DSOF ¶ 6; Pl.'s Resp. to DSOF ¶ 6. This Court dismissed the negligence, unjust enrichment, and strict liability products claims as to all Plaintiffs, as well as Donnelly's implied warranty of merchantability claim. 6/30/2016 Opinion and Order; DSOF ¶ 6; Pl.'s Resp. to DSOF ¶ 6. The only surviving claims were for breach of express warranty and Donnelly's Illinois consumer fraud claim, each of which was subject to position statements filed by the Plaintiffs to ensure that each party actually relied on Danze's warranty representations. 6/30/2016 Opinion and Order at 54. After Plaintiffs were unable to allege reliance on Danze's warranty for the individual condo owners, those claims were dismissed. R. 84, 10/11/16 Minute Entry; DSOF ¶ 9; Pl.'s Resp. to DSOF ¶ 9. Plaintiffs also voluntarily dismissed Donnelly. R. 85, 11/16/16 Minute Entry; DSOF ¶ 10; Pl.'s Resp. to DSOF ¶ 10. Thus, in November 2016, only Duncan Place's claim for breach of express warranty remained in the case.

Because the prior opinion and orders describe the allegations in detail, only those still relevant are set forth here. Danze advertises and sells its faucets in the United States through retailers, wholesalers, and the internet. Second Am. Compl. ¶¶ 12, 21. Danze equips each faucet it sells with a written warranty, which says that "[a]ll parts of the *Danze* faucet" will be "free from defects in material and

3

workmanship" for as long as the consumer owns it. R. 89-1, Def.'s Br., Exh. B ¶¶ B, C.[3]

Before Duncan Place was formed among condo owners in the Duncan Place Condominium, another corporation, Duncan Place, LLC, acted as the developer of the building. Pl.'s Resp. Br. at 2. Duncan Place, LLC hired Kimat Duncan Place, LLC to install the building's plumbing, including the now-infamous Danze faucets. Def.'s Br., Exh. F; DSOF ¶ 26; Pl.'s Resp. to DSOF ¶ 26. In July 2008, Kimat Duncan Place, LLC—acting as a subcontractor—bought 78 Danze faucets from a retailer, Keller Supply. R. 90-1, Pl.'s Statement of Facts (PSOF) ¶ 31; R. 91-2, Def.'s Resp. to PSOF ¶ 31; Def.'s Br., Exh. D, Keller Invoices. Keller Supply had previously purchased those same faucets directly from Danze. PSOF ¶ 32; Def.'s Resp. to PSOF ¶ 31; Def.'s Br., Exh. B ¶ A. Kimat Duncan Place then installed the Danze faucets in each unit in Duncan Place. *See* Def.'s Br., Exh. F; *id.* Exh. D. Construction Agreement at 1.

As the individual condominium units were sold, Duncan Place, LLC ceded control of the condominium association and common areas to Duncan Place. Def.'s Br., Exh. H at 16-20. Duncan Place was incorporated in April 2009 as a Washington state non-profit corporation. DSOF ¶ 27; Pl.'s Resp. to DSOF ¶ 27; Def.'s Br., Exh. G. Duncan Place, LLC contemplated the creation of an association made up of the condo unit owners, and solidified Duncan Place Owners Association's role in the Condominium Declarations signed by each individual purchaser. Def.'s Br., Exh. H.

---

[3]Plaintiff Duncan Place has incorporated by reference each of Danze's exhibits into its own brief and argument. Pl.'s Resp. Br. at 1 n.1. For clarity, the Court will cite to the exhibits as marked in Danze's brief, where they originated in the record.

§ 13.1. The declaration sets out the powers of Duncan Place, which include adopting regulations, contracting with other entities, and regulating the repair and replacement of common elements of the condominium building. *Id.* § 13.4. Initially, Duncan Place, LLC controlled which members would comprise Duncan Place's leadership, and provided for a transition period over which Duncan Place LLC would relinquish its control as more time went by and units were sold, until eventually Duncan Place's leadership and members would be wholly controlled by the condo owners. *Id.* §§ 14.1-14.2.

With that background in mind, in this lawsuit Duncan Place's breach of express warranty claim arises from purported defects in the Danze faucets. Despite representing that the faucets would be free from defects, Danze faucets potentially suffer from a defective, steel-braided water supply hose made with an "inferior low nickel stainless steel alloy," making each hose "susceptible to stress corrosion cracking." Second Am. Compl. ¶¶ 29, 31. As is wont to occur when defective hoses cannot withstand plumbing needs, some of the Danze faucets installed in Duncan Place condos corroded and failed, damaging the building, increasing insurance premiums, requiring the payment of deductible payouts, and causing the need for replacement faucets. *Id.* ¶ 47. Now, on its own behalf as the owners association for Duncan Place Condominiums, Duncan Place seeks relief for Danze's failure to live up to its warranty. After the dismissal of the other claims and additional discovery, Danze now moves for summary judgment, arguing that Duncan Place cannot show

5

that it was in privity with Danze or that it was an intended third-party beneficiary of Danze's warranty. Def.'s Mot. Summ. J. ¶¶ 7-8.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. The Text of the Warranty

Under Washington law,[4] to establish an express warranty, a seller must make an "affirmation of fact or promise" that relates to or describes the product at issue, and that representation must form "the basis of the bargain." Wash. Rev. Code Ann. § 62A.2-313 (West 2003); *see also Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash. App. Ct. 1997). At its core, the claim that Duncan Place asserts—and its own role in litigating it—depends on the terms of the warranty itself. Although no particular magic words are necessary to create an express warranty, *Hartman v. Barnes Grain & Feed Co.,* 284 P. 754, 755-56 (Wash. 1930), the words used by the seller are determinative as to how it applies. *See Fed. Signal Corp. v. Safety Factors, Inc.,* 886 P.2d 172, 178 (Wash. 1994). That is because the "more specific a statement, the more likely it is an affirmation of fact or promise." *Fed. Signal Corp.,* 886 P.2d at 178; *Cox*, 936 P.2d at 1198.

For Danze's faucets, there is no dispute as to the *existence* of an express warranty. The parties have stipulated that there is one. Def.'s Br., Exh. B. Rather, the dispute centers on *who* enjoys the benefit of the warranty, and what is the warranty's scope. Under a stipulation entered into by the parties, the warranty reads, "[a]ll parts of the *Danze* faucet are warranted to the *original consumer purchaser* to be free from defects in material and workmanship, for as long as the consumer purchaser owns it," *id.* ¶ C (emphasis added), and that Danze will

---

[4]As explained in the prior opinion, under choice of law principles, Washington law applies to Duncan Place's claim for breach of express warranty. 6/30/2016 Opinion and Order at 23-24. Neither party contests this assessment.

7

"replace 'free of charge', during the warranty period, any part that proves defective in material and/or workmanship under normal residential application," *id.* (emphasis omitted).

Because the warranty says that it protects "the original consumer purchaser," the warranty's text poses an insurmountable problem for Duncan Place's claim for coverage. Read in context, "the original consumer purchaser" must be the *first owner* of the faucet in a *residential* setting. 'First' because only the "original" consumer purchaser is covered. Def.'s Br., Exh. B ¶ C. 'Owner' because only a "consumer purchaser" is covered, and the warranty also says that it lasts only so long as "the consumer purchaser *owns*" the faucet. *Id.* (emphasis added). And 'residential' because the warranty only covers the faucet's usage "under normal residential application." *Id.* This interpretation squares with the affidavit submitted by the defense, in which Danze's Vice President of Brand Marketing, Kevin McJoynt, avers that the "original consumer purchaser" is the "initial residential purchaser of the individual single family resident/condominium unit" where a Danze faucet is installed. Def.'s Br., Exh. I ¶ 4. The affidavit, however, is not all that important, because the plain meaning of the warranty's terms is what dictates who is entitled to claim its protection.

In response, Duncan Place argues that if the warranty takes on that interpretation, then it is "illusory." Pl.'s Resp. Br. at 8. To Duncan Place's way of thinking, the condo owner would never see the warranty, because the builder buys and installs the faucets. Combine that with the legal proposition that, under

8

Washington law, the plaintiff invoking the express warranty must at least *know* about the warranty at the time of purchase. 6/30/2016 Opinion and Order at 27 (citing *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 731 (Wash. 1992); and *Baughn v. Honda Motor Co., Ltd.*, 727 P.2d 655, 669 (Wash. 1986)). So no one, in Duncan Place's view, will ever be able to successfully take advantage of the warranty. There are three problems with this argument: first, Duncan Place offers no record-evidence support for the factual premise. It might very well be that some home owners do participate in picking out fixtures, such as faucets, and would know about the warranty in making those decisions. Second, it is possible that builders could be considered the agents of home owners for purposes of knowing about the warranty. In other words, whoever buys and installs the faucet at the home owner's direction would be acting as the owner's agent, and thus the owner would be deemed to have the requisite knowledge of the warranty. It is worth emphasizing, however, that Duncan Place has never argued for this position. *See* R. 65, Pl.'s Resp. Br. at 11-13 (response to motion to dismiss). In any event, the third and most important problem with the "illusory" argument is that the plain meaning of the warranty's text cannot be stretched to say something it simply does not. It would be one thing to choose between two competing interpretations of a word or phrase in the warranty to avoid the result of an illusory warranty. It is quite another, as Duncan Place in essence proposes, to rewrite the warranty to cover condominium associations, or even general contractors or

9

subcontractors. In light of the warranty's text, there are no words or phrases by which to arrive at that interpretation.

### C. Third-Party Beneficiary

With the text of the warranty foreclosing Duncan Place's direct path for coverage, Duncan Place argues that it is a third-party beneficiary of the warranty. Pl.'s Resp. Br. at 6-7. A third-party beneficiary is a person or entity that, though not a party to a contract, will receive direct benefits from it. *Wolfe v. Morgan*, 524 P.2d 927, 930 (Wash. App. Ct. 1974); *McDonald Constr. Co. v. Murray*, 485 P.2d 626, 627-28 (Wash. App. Ct. 1971). Third-party beneficiaries can sue to enforce a contract, despite not being a signatory party. But to create that entitlement, the contracting parties must "intend that the promisor assume a direct obligation to the intended beneficiary at the time they enter into the contract." *Lonsdale v. Chesterfield*, 662 P.2d 385, 389 (Wash. 1983) (quoting *Burke & Thomas, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 600 P.2d 1282, 1285 (Wash. 1979)). The intent required to create a contract for the benefit of a nonparty is "'not a desire or purpose to confer a particular benefit upon him,' nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him." *Lonsdale,* 662 P.2d at 390 (quoting *Vikingstad v. Baggott,* 282 P.2d 824, 826 (Wash. 1955)). And how to know whether a promisor intended to take on a direct obligation? The contracting parties' intent is determined through an objective test, by "construing the terms of the contract as a whole, in light of the circumstances under which it [was] made" to see whether "performance under the contract would necessarily and

directly benefit [a third party]." *Postlewait Const., Inc. v. Great American Ins. Cos.,* 720 P.2d 805, 807 (Wash. 1986). So, if the terms of the contract "*necessarily require the promisor to confer a benefit upon a third person*" then the parties inherently "contemplate a benefit" to him. *Lonsdale,* 662 P.2d at 389 (quoting *Vikingstad v. Baggott,* 282 P.2d 824, 825 (Wash. 1955)) (some emphases omitted).

Not only must the promisor intend for the contract to benefit third parties, the specific person claiming a right to enforce the contract must be an *intended* beneficiary, as opposed to a merely "incidental" one. *See Postlewait Const.,* 720 P.2d at 806-07. "An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the promisor to perform a duty to a third party." *Warner v. Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. App. Ct. 2005). If the contract does not confer a direct benefit to a nonparty, then the nonparty "acquires no rights under the contract." *Snohomish Cty. Pub. Util. Dist. No. 1 v. Pacificorp*, 745 F. Supp. 1581, 1584 (D. Or. 1990) (applying Washington law). Washington courts have adopted the Restatement (Second) of Contracts on third-party beneficiaries, which is consistent with that state's prior precedent on the subject. *See Warner*, 114 P.3d at 670. The Restatement explains that a beneficiary gains a right to a promisor's performance if that performance is necessary to "effectuate the intention of the parties" and the surrounding circumstances show the promisor intends to give the benefit of its

performance to the beneficiary. Restatement (Second) of Contracts § 302 (Am. Law Inst. 1981).[5]

### 1. Direct Obligation

For Duncan Place to establish itself as a third-party beneficiary of Danze's warranty, it must prove (or, to avoid summary judgment, show that there is a genuine issue) that Danze intended, when it contracted to sell the faucets, to take on a direct obligation to Duncan Place under the warranty. But there is no substantive evidence, testimony, or argument that Danze ever intended that a consumer-purchaser warranty would benefit nonparties, like a condo association, that do not own or use the product. The direct obligation that Danze takes on is a "free of charge" replacement of the faucet during the time the original "consumer purchaser owns it." Def.'s Br., Exh. B ¶ C. That is not an obligation to a condo association like Duncan Place.

Nor is there anything in the contract between Danze and any purchaser that *necessarily* requires that Danze confer a benefit to condo associations, homeowners associations, or the like. Even a nonparty with a more direct claim for benefits does not qualify for third-party beneficiary status under Washington law. Take, for example, *Snohomish Cty. Pub. Util. Dist. No. 1 v. Pacificorp*, in which energy distributors had entered into an agreement with a conglomerate of municipalities that planned on generating electricity via nuclear energy. 745 F. Supp. 1581, 1582-83 (D. Or. 1990) (applying Washington law). The plaintiff, a local utility district,

---

[5]Because Washington cites to the Restatement on third-party beneficiaries, this Court researched other states that also have adopted the Restatement on that subject. But no cases were directly on all fours with this case.

had hoped to reap lower energy costs and entered into an agreement to buy electricity from the energy distributors. *Id.* at 1583. When it appeared that the energy distributors were going to breach the agreement with the conglomerate—not with the plaintiff—the local utility district brought suit for the anticipatory breach. *Id.* at 1583. The district court held, however, that the utility district was not a third-party beneficiary to the other agreement, as that agreement did "not name Snohomish as a beneficiary, nor [was] there any indication from any of the contract terms or circumstances pleaded that any of the parties intended to give local utility districts rights or direct benefits under the contracts." *Id.* at 1584. The "benefit of lower rates" from the energy distributors' "participation" in the agreements did not make the plaintiff a third-party beneficiary; it was only an incidental one. *Id.* So too here. Danze's replacement of a faucet under the warranty does not "necessarily and directly" benefit Duncan Place. *See Warner,* 114 P.3d at 670 (Wash. App. Ct. 2005); *Snohomish*, 745 F. Supp. at 1584. The necessary and direct beneficiary of the warranty is the consumer purchaser who owns and uses the faucet, not Duncan Place.[6]

---

[6]The incidental beneficiary status of Duncan Place is further illustrated in an example in the Restatement. It describes:

> A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building.

Restatement (Second) of Contracts § 302 cmt. e. (Am. Law Inst. 1981). Here, Duncan Place is akin to C, and just an incidental beneficiary to Danze's promise to supply goods for the construction of the building.

## 2. The Subcontract

Duncan Place's final road to claim coverage as a beneficiary of the warranty requires a multi-step path to coverage: to succeed (1) Kimat Duncan Place, LLC, the plumbing subcontractor, must be entitled to coverage under the warranty; (2) Duncan Place, LLC (the developer) must be a third-party beneficiary of the warranty; and (3) Duncan Place (the condominium association) must be the successor to all of the rights of Duncan Place, LLC. Pl.'s Resp. Br. at 4; R. 90-1, Pl.'s Statement of the Facts (PSOF) ¶¶ 39-41. But this path breaks down at each step. First, as explained above, the warranty only covers the first owner of the faucet in a residential setting, and not a plumbing subcontractor like Kimat Duncan Place, LLC.

Second, even if Kimat Duncan Place, LLC (the plumbing subcontractor) qualified as a purchaser covered by the warranty, Duncan Place, LLC would not be a third-party beneficiary of the warranty. If anything, the condo's residential owner would be the beneficiary of the installation and of the faucet—not the developer of the condo project. Duncan Place points to the Construction Agreement between itself and Kimat to support the contention that Duncan Place, LLC qualifies as the beneficiary. It is true that, as between Kimat Duncan Place, LLC and Duncan Place, LLC, those two parties did enter into a Construction Agreement that says that the work performed by Kimat is for the "direct benefit" of Duncan Place LLC:

> Further, Subcontractor specifically agrees and acknowledges that the performance of the Work shall also be for the direct benefit of the Construction Manager and of Duncan Place, LLC and its managers, members and/or any successor owners of the Project (collectively "Owners").

> Subcontractor agrees Construction Manager and Owners are third party beneficiaries of each and every term and condition contained within this Agreement and each Addendum and Exhibit thereto (collectively, the "Subcontract Documents").

Def.'s Br., Exh. D, Construction Agreement at 1.[7] The Construction Agreement sets forth Kimat's responsibility to perform the plumbing installation for Duncan Place, LLC. *Id.* That contract acknowledges that the "performance of the Work" is for the direct benefit of Duncan Place, LLC (and its successors). *Id.* The Construction Agreement goes on to say that Duncan Place, LLC is a third-party beneficiary of "each and every term and condition contained within this Agreement." *Id.*

But the Construction Agreement is *not* the proper source of third-party beneficiary status under the *warranty*. By pointing to the Construction Agreement, if anything, Duncan Place is really arguing that Kimat assigned its right to enforce the warranty to Duncan Place, LLC. But Duncan Place offers no Washington case law or other authority for the proposition that the express warranty, which limits the coverage to the original consumer purchaser, can be assigned in that way. In any event, there is no "term" or "condition" in the Construction Agreement that refers to the Danze warranty, or even to warranties more broadly. *See* Def.'s Br., Exh. D, Construction Agreement at 1. At best, Duncan Place says that the warranty is incorporated by reference, because the plumbing proposal included descriptions of Danze products. Pl.'s Resp. Br. at 4-5; Def.'s Br., Exh. F. But the description—which consists of a single notation to "Danze Parma D22158 lav faucets"—does not actually specify that there is a warranty or that a warranty is being conferred on

---

[7]The agreement went into effect on September 12, 2007. Construction Agreement at 1.

15

Duncan Place, LLC. Def.'s Br., Exh. D, Keller Invoices at 1-2. Nor do the invoices for the faucets mention the warranties, not even in boilerplate text. *Id.*

Third and last, even if Kimat Duncan Place, LLC was entitled to invoke the warranty, and even if in turn Duncan Place, LLC was entitled (through Kimat) to invoke the warranty, still Duncan Place's path to coverage would fail because it is not the "successor owner[]" of Duncan Place, LLC. Construction Agreement at 1. According to Duncan Place, the "very documents establishing the successor relationship" are its certificate of incorporation and the condominium declaration that all new owners sign upon purchase. Pl.'s Resp. Br. at 4; *see* Def.'s Br., Exhs. G, H. But neither document identifies Duncan Place as the "successor owner[]," the term used in the Construction Agreement, of Duncan Place, LLC. For one, the certificate of incorporation merely shows that the owners association did in fact create a corporation—not that it succeeds the developer. *Id.* Exh. G. The condominium declaration is insufficient too. Yes, the declaration does describe the formation of an owners association with certain powers and responsibilities. *Id.* Exh. H at 16-20. It does not, however, say anything about becoming the "successor owner[]" of Duncan Place, LLC. Remember that, in the Construction Agreement between Kimat and Duncan Place, LLC (to which Duncan Place pins its third-party beneficiary claims), the "Project" is defined as the entire 63-unit Duncan Place Condominium project, and the beneficiaries specifically are "any successor owners of the *Project*." Def.'s Br., Exh. D, Construction Agreement at 1 (emphasis added). Duncan Place offers no evidence that it is the owner of the development project

16

itself, rather than the nonprofit corporation-association that simply helps coordinate the owners, as authorized by Washington's Condominium Act, Wash. Rev. Code § 64.34; Def.'s Br., Exh. H, Condo Decl., Art. 13 (defining the Duncan Place Owners Association). So this third link in Duncan Place's chain of reasoning fails too.

## IV. Conclusion

For the reasons discussed, Danze's motion for summary judgment must be granted. No reasonable jury could find that Duncan Place is covered by the express warranty. Summary judgment is entered against Duncan Place's express-warranty claim. Because that was the sole remaining claim, final judgment shall be entered in favor of Danze and against Duncan Place.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 15, 2017

17